IN RE the MARRIAGE OF: Audrey H. FORESTER, Petitioner-Respondent-Cross Appellant,†

v.

James G. FORESTER, Respondent-Appellant-Cross Respondent.

Court of Appeals

*No. 92-0883. Submitted on briefs December 4, 1992.—Decided January 27, 1993.*

(Also reported in 496 N.W.2d 771.)

†Petition to review denied.

On behalf of the respondent-appellant-cross respondent, the cause was submitted on the briefs of *David A. Saichek* of *Saichek & Hertel, S.C.,* of Milwaukee.

On behalf of the petitioner-respondent-cross appellant, the cause was submitted on the briefs of *Jennifer M. Wall* and *Carla A. Kot* of *Brenner, Brenner & Wall* of Waukesha.

Before Brown, Anderson and Snyder, JJ.

BROWN, J. James G. Forester appeals, and Audrey H. Forester cross-appeals from a judgment of divorce. The main issue is whether the trial court's award of $6000 permanent monthly maintenance to Audrey meets the fairness and support objectives set forth in *LaRocque v. LaRocque,* 139 Wis. 2d 23, 406 N.W.2d 736 (1987). We reverse the trial court's maintenance award because we conclude that the award meets neither the fairness nor the support objective. The parties raise several other issues, which we will discuss in turn.

James and Audrey were divorced on May 17, 1991, after thirty-three years of marriage. The trial court found that each party had contributed equally to the other's education and that each party had contributed to the marriage. James is an attorney in solo practice and earns approximately $260,000 per year. He expects to continue practicing law. The trial court found that Audrey contributed to James' earning power during the

marriage by managing the household while he worked fifty to sixty hours per week. The trial court also found that both parents made significant contributions of both time and effort to the children and household.

Audrey has a bachelor's degree in addition to certification as a surgical technician. She did not work outside the home between 1959 and 1977. In 1978, Audrey began full-time employment as a surgical technician. She worked at one hospital until 1988, stopped working for four months, then went back to full-time on call employment at two hospitals until 1990. In September 1990, she terminated her relationship with the hospitals and moved to the U.S. Virgin Islands. There, Audrey purchased a large boat and began a charter sailing business. The charter business is not expected to generate income in the foreseeable future, and Audrey does not intend to return to work as a surgical technician.

The trial court made detailed findings of fact regarding the parties' potential incomes after divorce. First, the court set the parties' reasonable monthly budgets at approximately $3500 each. It then found that James' earning capacity is $260,000 per year, or about $21,667 per month. James' separate estate was stipulated to be $35,725. The court did not consider the earnings on James' separate estate or on the proceeds from the sale of the homestead and personalty when calculating his income. However, the court did consider the law practice's accounts receivable and work in progress in determining James' ability to pay maintenance. The court determined James' after-tax monthly income to be an average of $9773 if he paid $6000 per month in maintenance.

The court valued Audrey's separate estate at $215,673. It found that earnings on Audrey's separate estate and on the property division proceeds would total

approximately $25,540 annually. In addition, the court found that her earning capacity as a surgical technician is $22,672 per year based on full-time employment. Audrey's earning capacity, however, was not included in the court's determination of her monthly income.[1] Without maintenance, the court found that Audrey would have a monthly gross income of $2191. With maintenance, her net income would be $6139 monthly.

Based on its factual findings and conclusions of law, the trial court awarded to Audrey permanent monthly maintenance of $6000. James appeals based on this and several issues raised in the property division. Further facts will be introduced as they are necessary to our discussion.

Our review of a maintenance award must begin with the factors delineated in sec. 767.26, Stats.[2] *LaRocque,*

---

[1] The court stated:

> The court finds that petitioner will have cash assets totaling $364,850 to invest after the property division contemplated by this Judgment has been accomplished; the court further finds that this amount can reasonably be invested at a taxable rate of seven percent per annum resulting in annual investment income of $25,540 which equates to monthly investment income of $2,128. In addition, the court finds that petitioner will continue to receive her St. Michael's pension of $63.00 per month for monthly gross income of $2,191 available to petitioner without financial support from the respondent.

[2] Section 767.26, Stats., states in relevant part:

> **Maintenance Payments.** Upon every judgment of ... divorce ... the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:
>
> (1) The length of the marriage.
>
> (2) The age and physical and emotional health of the parties.
>
> (3) The division of property made under s. 767.255.
>
> (4) The educational level of each party at the time of marriage and at the time the action is commenced.

139 Wis. 2d at 31, 406 N.W.2d at 739. We must consider whether a trial court's application of the statutory factors achieves both the fairness and support objectives of maintenance. *Id.* at 33, 406 N.W.2d at 740.

■

The determination of the amount and duration of a maintenance award is entrusted to the trial court's discretion, and we will not reverse absent a misuse of discretion. *Fowler v. Fowler,* 158 Wis. 2d 508, 519, 463 N.W.2d 370, 374 (Ct. App. 1990). We are mindful that

> the exercise of discretion is not the equivalent of unfettered decision-making . . .. [A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for

(5) *The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.*

(6) *The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.*

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant. [Emphasis added.]

the purpose of achieving a reasoned and reasonable determination.

*Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). A trial court misuses its discretion if it misapplies or fails to apply any of the statutory factors, or if it fails to give full play to the dual objectives of maintenance. *See id.* at 66, 306 N.W.2d at 20-21.

We conclude that the trial court did not properly apply the statutory factors and failed to fully consider the objectives of maintenance. The trial court's conclusions of law state:

E. Based on the factors set out in Section 767.26, Wis. Stats., and the applicable case law, the court grants permanent maintenance to the petitioner.

F. A marriage of thirty-three years is lengthy and mitigates in favor of a maintenance order.

G. During this marriage there was an unspoken agreement that the respondent would be the chief breadwinner, however, no written agreement exists nor is there evidence of an agreement for continuing support between the parties.

H. Significant factors favoring a maintenance order involve the disparate educational levels and earning capacities of these parties.

I. Both parties have contributed to the education of the other: petitioner to respondent's legal education and respondent to petitioner's vocational training.

J. Mrs. Forester devoted her time to the family, thereby freeing the respondent to develop his law practice.

K. At the time of trial the parties were fifty-four and fifty-six years of age, respectively, in good health and within their income producing years.

L. The court considers other factors in its maintenance allowance including petitioner's contribution

to the household from her separate funds and respondent's contribution of effort to the law practice in excess of a forty hour work week.

M. The court also considered the tax consequences to each party.

N. Finally, the court considered the important factor of maintaining the petitioner at a standard of living reasonably comparable to that enjoyed during the marriage.

The court went on to state that Audrey has a skill as a surgical technician and could earn an additional $22,672 per year at that occupation. . ... However, she has chosen to change careers.

James argues that the trial court did not explore the facts in adequate detail and therefore misapplied the statutory factors. His initial arguments go to the support objective of maintenance. His principal assertion is that Audrey's available monthly income is significantly greater than $2191. He also contends that her budget during marriage was $2000 per month, which he gave her from his earnings. Therefore, James argues, her present monthly budget should be $2000.

James further argues that Audrey's choice to change careers is not his fault and that her earning capacity as a surgical technician should have been included by the court as income. James further asserts that Audrey should be required to support herself by using the principal of her inheritance as she did during the marriage. Finally, he argues that Audrey has sufficient education to become self-supporting and that permanent maintenance is unnecessary.

James' remaining arguments go to the fairness objective of maintenance. His major contention is that the trial court's award is unfair because it does not encourage Audrey to become self-supporting. Instead, it

requires him to continue working in excess of forty hours per week while Audrey enjoys an enhanced standard of living without having to work. He also asserts that Audrey did not contribute to his earning power and that she did not sacrifice her own earning capacity as a result of the marriage. James asks this court to deny maintenance, or in the alternative to remand the case for determination of short-term, low maintenance.

Audrey responds that the trial court addressed the proper factors. We understand her argument to be that she and James are entitled to equal cushions of income over expenses. This would give her the standard of living that she enjoyed during the marriage. She correctly points out that $2000 per month is not an accurate reflection of her standard of living during marriage, because James paid major expenses for the benefit of the entire family. However, Audrey asks us to ignore her choice not to work and asserts that her noneconomic contributions during the marriage entitle her to share the stream of income from James' law practice. She points out that James makes his arguments without considering that she contributed to the family from her separate funds.

██

We agree with James that the trial court did not fully consider the statutory factors in making its award. Noticeably absent from the court's discussion is any mention of Audrey's ability to become self-supporting in the future. See sec. 767.26(6), Stats. Furthermore, although the court calculated Audrey's earning capacity as a surgical technician, it did not consider that potential income at any point in its calculation of maintenance.

The omission of earning capacity from the equation resulted in the assumption that Audrey would not work

to contribute to her standard of living. It also resulted in a significant reduction in the court's determination of monthly income. We conclude that the trial court's failure to consider Audrey's earning capacity as a surgical technician was a misapplication of the statutory factors. It amounted to a misuse of the trial court's discretion, and we therefore reverse on this issue.

Our conclusion is consistent with the support and fairness objectives of maintenance. We recognize that support is not to be calculated at bare subsistence levels. *Fowler*, 158 Wis. 2d at 520, 463 N.W.2d at 374. Maintenance is designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party *exercising reasonable diligence* has reached a level of income where maintenance is no longer necessary. *Vander Perren v. Vander Perren*, 105 Wis. 2d 219, 230, 313 N.W.2d 813, 818 (1982) (emphasis added). A trial court misuses its discretion if it awards maintenance that is excessive. *Hubert v. Hubert*, 159 Wis. 2d 803, 818, 465 N.W.2d 252, 257 (Ct. App. 1990).

Although we disagree with James that $2000 per month is a fair representation of Audrey's predivorce support needs, we cannot agree with the trial court that $6000 per month is necessary. The trial court found that $3500 was a reasonable monthly budget for each of the parties. With maintenance, Audrey has a monthly income nearly double what she needs. Such an award is excessive and thwarts the goal of support by discouraging Audrey from diligently pursuing sources of income that would make her self-supporting.

89

In addition to exceeding Audrey's support needs, the trial court's maintenance order is unfair. It requires James to continue working fifty to sixty hours per week, but allows Audrey to forego employment. James also argues on appeal that Audrey should be required to use the principal of her inheritance to support herself. He claims that Audrey used her inheritance to enhance her standard of living during the marriage and should be required to continue to do so. James presents this as a fairness argument. However, he essentially asks us to transmute Audrey's separate estate into marital property for purposes of the property division.

The record contains no findings or arguments pertaining to whether Audrey transmuted her inheritance to marital property by spending some of the principal during the marriage. Neither does James specifically raise the transmutation issue on appeal. We are bound by *Popp v. Popp*, 146 Wis. 2d 778, 788-89, 432 N.W.2d 600, 602-03 (Ct. App. 1988), to consider separate property in a property division only if the character and identity of the property have been changed during the marriage. Because no findings or arguments were made on these issues, and because transmutation was neither briefed nor argued by James, we reject his arguments and affirm the trial court's decision to exclude the principal of Audrey's inheritance from the property division.

Audrey asserts that her standard of living can only be maintained through an order for permanent maintenance. She argues that she chose to change careers before the divorce and that she should not now be forced to return to surgical technician work. Therefore, even though her charter business is not expected to produce income, she effectively contends that James should be her major source of income after the divorce. This, she

says, will provide an incentive for him to continue at his present high rate of production.

It is unfair for Audrey to require James to continue his production while she decreases hers. She should not be allowed to "make a career choice which involve[s] a substantial reduction in her earning capacity and simultaneously insist that her husband support her at the standard of living she enjoyed while she was employed in her previous employment." *See Fowler,* 158 Wis. 2d at 521, 463 N.W.2d at 374-75. For all of these reasons, we hold that the trial court misused its discretion in determining the amount and duration of the maintenance award. We reverse and remand this issue to the trial court for a determination of maintenance that takes into account Audrey's earning capacity and her ability to become self-supporting at a standard of living reasonably comparable to the one that she enjoyed during marriage. We now turn to the other issues raised by the parties.

## VALUE OF THE LAW PRACTICE

The trial court did not offset the value of the law practice assets against the debts. James claims that the court's valuation of his law practice was therefore clearly erroneous. James cites *Peerenboom v. Peerenboom,* 147 Wis. 2d 547, 433 N.W.2d 282 (Ct. App. 1988), as support for his argument. He asserts that the proper method of offsetting assets against debts would have resulted in a negative value for his practice.

Property division, which includes the valuation of the marital estate, is addressed to the discretion of the trial court. *See id.* at 551, 433 N.W.2d at 284. A trial court misuses its discretion if it fails to support its decision with facts of record or with adequate reasoning. *See*

91

*id.* at 552-53, 433 N.W.2d at 285. Double counting of an asset is not permitted. *Id.* at 552, 433 N.W.2d at 284.

In *Peerenboom*, the trial court did not consider the debts outstanding against the respondent's dental practice. The trial court did, however, consider the accounts receivable as assets when valuing the practice. The court of appeals held that the trial court had misused its discretion by failing to offset the practice's accrued debts against its accrued income. The trial court also misused its discretion because it gave no explanation for its failure to consider the business debts. The court of appeals reasoned that the trial court's valuation of the dental practice was not based on sufficient evidence and adequate reasoning. *Id.* at 553, 433 N.W.2d at 285.

As a result of the trial court's error, James claims that he was assigned the entire debt while Audrey received one-half of the assets. He argues that the accounts receivable were considered when the trial court calculated maintenance, and therefore, the business debts should be considered as well. Finally, James asserts that the amount of the debt should be updated to the day of trial instead of using the year-end balance sheet.

Audrey responds that the trial court implicitly intended the debts to be paid with the accounts receivable and work in progress income. We understand the argument to be that because the accounts receivable and work in progress were not included in the valuation of the law practice, then neither should the business debts be included. She also argues that the debt amount should not be updated unless the assets are updated as well.

We conclude that the trial court misused its discretion by failing to provide adequate reasoning for its decision to exclude James' law practice debt from its valuation of the practice. The trial court gave a lengthy

explanation for its methods of calculating assets, but simply said Mr. Forester is assigned the business line of credit debt and will hold Petitioner harmless. Because of the lack of reasoning, we reverse and remand on this issue as well.

We find no support in the record for Audrey's assertion that the trial court impliedly ruled that James was to pay the debt out of the income stream generated by the accounts receivable and work in progress. In fact, those items were specifically excluded from the trial court's valuation of the law practice because the trial court considered the future income stream when awarding maintenance. On remand, the trial court is cautioned to avoid double counting the accounts receivable and work in progress; this income stream may be used *either* to pay maintenance *or* for business valuation purposes.

## DIVISION OF THE KEOGH PLAN

The family court commissioner issued a temporary order requiring James to pay $1000 per month to a KEOGH plan during the pendency of the divorce action. James claims he did not contribute to the plan because he did not have enough money. Without making any findings as to James' ability to pay, the trial court presumed compliance with the commissioner's order and counted the KEOGH plan as an asset worth $14,000. The plan was then divided equally between the parties.

Audrey claims that James had budgeted for $1000 per month to be contributed to a retirement or KEOGH plan. However, the trial court did not make any such finding and the family court commissioner ordered the contribution without making any finding in the record. We therefore remand this issue to the trial court for a determination of James' ability to contribute to the plan.

## CAPITAL GAINS ON HOMESTEAD

The sale of the Foresters' homestead resulted in significant capital gains. The trial court credited Audrey with $23,109 in the property division to account for the capital gains tax for which she is liable. James argues that the trial court erred because Audrey could defer the gain on the homestead by claiming her boat as her principal residence. Audrey responds that the boat is not her principal residence and that she has no way to escape tax liability because she is too young to use her lifetime exclusion.

We agree with Audrey. James did not present any evidence at trial that the boat was Audrey's principal residence. In fact, the record shows that Audrey maintained an apartment in the Virgin Islands. Audrey will be responsible for the taxes on her portion of the gain, and the trial court did not err by considering that liability in the property division. We affirm.

## TAX REFUNDS

The family court commissioner's temporary order directed the Foresters to file a joint income tax return for 1989. James was directed to deposit any 1989 tax refund with the clerk of courts. The temporary order then divided the parties' tax liability as follows: James was to be responsible for the 1990 state and federal income tax and his own self-employment tax; Audrey was to pay her own F.I.C.A. James failed to deposit the 1989 refund with the clerk of courts. Instead, he applied the entire refund of $39,529 toward his 1990 estimated taxes.

In the property division, the trial court treated the 1989 tax refund as an asset and assigned its entire value to James. James asserts that this was error. He argues that because the parties were still married at the end of 1990, they were jointly liable for the 1990 income taxes. Therefore, his application of the 1989 refund to the 1990 taxes equally benefited both parties.

In contrast, Audrey points out that the 1990 taxes were assigned to James by court order. That order was neither modified nor extinguished during the pendency of the divorce proceedings. Therefore, James deprived Audrey of approximately $20,000 when he failed to deposit the 1989 refund with the clerk of courts. Audrey asserts that the credit against the 1990 taxes benefited only James.

We agree with Audrey and affirm the trial court. James was responsible for the 1990 taxes. When he applied the 1989 refund toward his 1990 liability, he used one hundred percent of a joint marital asset to pay a debt for which he alone was liable. Fifty percent of the 1989 refund belonged to Audrey, but she does not have access to it. The trial court did not misuse its discretion when it assigned the entire refund to James. In fact, the trial court's decision is consistent with James' use of the money.

## STUDENT LOANS

Finally, the trial court assigned a $2479 debt to James for his liability on his sons' student loans. James claims that the trial court abused its discretion by failing to articulate reasons for this assignment of debt. He further contends that the record does not support the trial court's decision. Audrey responds that James acknowledged personal assumption of a debt for his adult children. Because he was under no obligation to

pay the loans in the absence of a default, Audrey characterizes James' action as a gift to his adult children. She argues that she should not share responsibility for a debt that James voluntarily assumed as a gift.

We agree that the trial court did not articulate its reasons for assigning the student loan debt to James. However, we may still affirm if in our view the record contains facts that would support the trial court's decision had it properly exercised discretion. *See State v. Johnson,* 118 Wis. 2d 472, 481, 348 N.W.2d 196, 201 (Ct. App. 1984). The record shows that James included the student loans in a listing of his personal debts at trial. He testified on the stand that his liability on the loans totaled $2479. James was under no obligation to pay his adult offsprings' debts. We hold that the facts support the trial court's property division because James' assumption of liability is essentially a gift to his sons. Consequently, we affirm the assignment of the entire student loan debt to James.

## CROSS-APPEAL

Audrey cross-appeals, claiming that good will should have been included in the valuation of James' law practice. She cites SCR 20:1.17 (Lawyers Cooperative 1992) as support for her argument. That rule became effective on October 25, 1991. The divorce was final on May 17, 1991. Because assets are valued as of the date of the divorce, the Supreme Court Rule does not govern in this case. We affirm the trial court's decision not to include good will in the law practice valuation.

## CONCLUSION

On remand, the trial court should reconsider its award of permanent maintenance and its exclusion of debts from the valuation of the law practice. The trial court is instructed to include Audrey's potential earnings as a surgical technician when it determines maintenance. The court should also consider Audrey's ability to become self-supporting. Furthermore, the court should put in the record its reasons for excluding the business debts from its calculations. Finally, the trial court is instructed to make specific findings of fact regarding James' ability to contribute to a KEOGH or retirement plan.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.