IN RE the MARRIAGE OF: Diane Marie BRABEC, Petitioner-Appellant, †

v.

Todd Anthony BRABEC, Respondent-Respondent.

Court of Appeals

*No. 93–0588. Submitted on briefs November 9, 1993.—Decided December 21, 1993.*

(Also reported in 510 N.W.2d 762.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the brief of *William R. Lamb* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the respondent, the cause was submitted on the brief of *Susan Schleif Gherty* of *Gherty & Gherty, S.C.* of Hudson.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Diane Brabec appeals an order denying her maintenance from her former husband, Todd Brabec. Diane argues that the trial court abused its discretion by considering her conviction for soliciting to kill Todd. Alternatively, Diane argues that even if the trial court's consideration of her conviction was appropriate, it abused its discretion by denying Diane maintenance altogether. Because prohibiting the court from considering this factor would achieve an unreasonable and absurd result, and because the trial court properly applied the statutory factors, as well as considered both the support and fairness objectives of maintenance, we reject Diane's argument. We therefore affirm.

Diane and Todd married in 1972 and in 1990 Diane filed an action for divorce. In July 1991, the trial court granted the divorce but reserved the issues of child support, maintenance and property division.

Later in July, Diane began negotiations with Louis Tomaselli to have Todd murdered. Tomaselli was an undercover agent with the Wisconsin Department of Justice. Additional conversations between Diane and Tomaselli, and the payment of $2,500, half of the agreed upon price, by Diane to Tomaselli led to Diane's arrest in August 1991 for solicitation for the first-degree murder of Todd Brabec.

While awaiting her criminal trial, the hearing on the remaining divorce issues was held. The parties stipulated to custody and property division. No child support order was entered because Diane was incarcerated. It was agreed that Diane would receive temporary maintenance payments of $230. The court reserved ruling on any further maintenance award pending the outcome of Diane's criminal trial. The divorce judgment was entered in December 1991.

In March 1992, Diane pled guilty to two counts of solicitation in connection with the attempted first-degree murder of Todd. She was sentenced to fourteen months at Taycheedah Correctional Institute for count one, and ten years probation for count two. Diane was released from Taycheedah in June 1992, and remains on probation.

Upon her release, Diane moved for increased maintenance based on the fact that the original order was held open pending the conclusion of the criminal case against her, and now Diane was out of prison and unemployed. Todd filed a motion for child support. At the September 1992 hearing, testimony was taken of both parties, a vocational evaluator and a psychologist. The vocational expert was unable to testify as to any medical restrictions that would prohibit Diane from employment. The testimony indicated that Diane was capable of various types of work, but felt her criminal conviction might interfere with employment. Diane's psychologist testified that there was currently no need for her to be medicated for her depression, but offered no opinion as to her ability to be employed.

The trial court issued a memorandum decision in January 1993. By applying sec. 767.26, Stats., factors one through nine,[1] the trial court determined that Diane could be eligible for monthly maintenance up to

---

[1] Section 767.26 states:

Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

approximately $1,000. However under the tenth factor—"[s]uch other factors as the court may in each individual case determine to be relevant"—the court found that the "other factor," Diane's conviction for soliciting to murder Todd, was of sufficient weight to deny her support.

Diane argues that because "the legislature did not intend to allow the circuit court to consider marital misconduct a relevant factor in granting maintenance payments under sec. 767.26, Stats. 1979-80," *Dixon v. Dixon*, 107 Wis. 2d 492, 505, 319 N.W.2d 846, 853 (1982), the trial court misapplied the law, and thereby erroneously exercised its discretion, when it considered

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

Diane's attempt to have Todd murdered. We do not agree.

Determination of the amount and duration of maintenance is entrusted to the trial court's discretion, and this court will not reverse absent an erroneous exercise of discretion. *Forester v. Forester*, 174 Wis. 2d 78, 85, 496 N.W.2d 771, 774 (Ct. App. 1993). The trial court erroneously exercises its discretion if it misapplies or fails to apply any of the statutory factors set out in sec. 767.26, Stats., or if it fails to give full play to the dual objectives of maintenance. *Forester*, 174 Wis. 2d at 86, 496 N.W.2d at 774.

The dual objectives of maintenance are support and fairness. *LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736, 739 (1987). We must consider whether a trial court's application of the statutory factors achieves both of these objectives. *Id.* at 33, 406 N.W.2d at 740. The support objective serves to support the recipient spouse in accordance with the needs and earning capacities of the parties. The fairness objective is meant to ensure a fair and equitable financial arrangement between the parties in each individual case; to "compensate the recipient spouse for contributions made to the marriage, give effect to the parties' financial arrangements, or prevent unjust enrichment of either party." *Id.*

Diane argues that the trial court misapplied the law when it considered her conviction for solicitation in its fairness analysis because marital misconduct is not to be considered in ordering maintenance. Nowhere in sec. 767.26, Stats., does the legislature state that marital misconduct cannot be considered. In fact, a review of the legislative history of the 1977 Divorce Reform

Act, of which sec. 767.26 was a part, indicates that the legislature intentionally omitted this restriction from the statute. The original bill submitted to the assembly expressly stated that "[i]n making an order for maintenance payments, the court may not consider the marital conduct of either party." Section 42, 1977 A.B. 100. An amendment to this bill deleted this provision.[2] Another amendment stated that in awarding maintenance payments the trial court shall consider "such other factors as the Court may in each individual case determine to be relevant, including the marital misconduct of either party".[3] This amendment was also defeated. The legislature did, on the other hand, expressly state in sec. 767.255, Stats., the property division statute, that "[t]he court shall presume that all other property is to be divided equally between the parties, but may alter this distribution *without regard to marital misconduct. . . .*" (Emphasis added.)

Despite the ambiguous legislative history, our supreme court has determined that "the legislature did not intend to allow the circuit court to consider marital misconduct a relevant factor in granting maintenance payments under sec. 767.26, Stats. 1979-80." *Dixon,* 107 Wis. 2d at 505, 319 N.W.2d at 853. Construction given to a statute by the supreme court becomes part of the statute unless the legislature subsequently amends the statute to effect change. *State ex rel. La Follette v. Circuit Court,* 37 Wis. 2d 329, 341, 155 N.W.2d 141, 147 (1967). Therefore, the effect of *Dixon* was to add to the statute what the legislature

---

[2] Assembly Amendment No. 10 to Assembly Substitute Amendment 1 to 1977 A.B. 100.

[3] Assembly Amendment No. 21 to Assembly Substitute Amendment 1 to 1977 A.B. 100.

deleted—marital misconduct is not to be considered in determining maintenance.

On the other hand, the plain language of a statute is not to be construed to achieve an absurd or unreasonable result. *Coca-Cola Bottling Co. v. La Follette*, 106 Wis. 2d 162, 170, 316 N.W.2d 129, 133 (Ct. App. 1982). We conclude that to construe sec. 767.26, Stats., as denying the trial court the discretion to consider the fact that Diane Brabec attempted to hire someone to kill her former husband would achieve an unreasonable result; especially considering the fact that if Diane had been successful in her attempt to have Todd killed she would receive no maintenance at all. *See In re Rooney*, 19 Wis. 2d 89, 93, 119 N.W.2d 313, 315 (1963) (alimony payments to divorced wife cease upon death of divorced husband).

In construing sec. 767.26, Stats., as modified by *Dixon*, we note that the circumstances present in our case were not considered by the supreme court when it made the broad statement that marital misconduct cannot be considered when ordering maintenance. The misconduct involved in this case, solicitation to kill one's spouse, does not fit into the reasoning used in *Dixon*.[4] The conduct in this situation is much more severe, and, arguably, is not even "marital misconduct" because it is not conduct against the marital relationship. *Dixon's* conclusion, that marital misconduct

---

[4] The parties here base their arguments on the timing of the misconduct. Diane argues that *Dixon's* prohibition of considering marital misconduct should be extended to "post-marital" conduct, while Todd argues that *Dixon* only applies to misconduct during the marriage. Because we conclude that the timing of the conduct is not as critical as the nature of the conduct, we focus on the nature of the conduct.

cannot be considered, was reached within the context of adultery;[5] conduct contrary to the marital relationship and much less severe than soliciting to kill.

In *Dixon*, the supreme court offered three reasons for rejecting the argument that the legislature's omission of an express direction not to consider marital misconduct means the legislature intended to retain prior Wisconsin law allowing the court to consider it. The first reason was that the 1977 Divorce Reform Act was a "sweeping reform which changed the divorce law in this state from a fault-based statute to a no-fault divorce law. With fault eliminated as a ground for divorce, we are not convinced that evidence of fault is relevant in deciding the financial settlement." *Id.* at 501, 319 N.W.2d at 850-51.

Here, Diane's "misconduct" was not related to the marital relationship; it obviously had nothing to do with the break-up of the marriage. One might assume that conduct as severe as trying to hire someone to kill one's spouse is a last resort, and not the reason underlying the deterioration of the marriage. Consequently, considering Diane's actions is not contrary to the 1977 Divorce Reform Act's intent to "move[ ] away from assigning blame between the spouses for the failure of the marriage. . . ." *Id.* at 503, 319 N.W.2d at 851.

The second reason the supreme court offered for its conclusion that the legislature did not intend the cir-

[5] In *Dixon*, Mrs. Dixon argued that the trial court erred in refusing to admit evidence of Mr. Dixon's adultery in determining maintenance. "According to Mrs. Dixon, marital misconduct (adultery) is relevant to the determination of maintenance payments, and the statutes, specifically sec. 767.26(10), Stats., 1979-80, provide that the court should, in determining maintenance payments, consider 'relevant' factors." *Dixon*, 107 Wis. 2d at 495, 319 N.W.2d at 848.

cuit court to consider marital misconduct is that the legislature repealed the statute prohibiting the award of alimony to a wife "guilty of adultery not condoned."[6] The supreme court's explanation of this reason, in full, is: "This statutory prohibition was apparently significant in the evolution of the case law that a court should consider marital misconduct in determining alimony. With this proscription deleted, the statutory basis for the rule no longer exists." *Id.* at 503, 319 N.W.2d at 852. Again, this reason goes toward fulfilling the goal of the legislature to move away from assigning blame between the spouses for the failure of the marriage. And again, because in our fact situation the consideration of Diane's "misconduct" is not a consideration of who caused the break-up of this marriage, the supreme court's second reason does not apply.

The final reason the supreme court gives for its conclusion is that it did not read prior case law as holding that marital misconduct was a significant factor in awarding alimony even before Wisconsin adopted the theory of no-fault divorce.

> [T]his court limited the circuit courts' consideration of marital misconduct. A court could not use the alimony award to "punish" marital misconduct. This court said: "While the trial court may consider the deliberate misconduct of the parties during the course of the marriage as a factor bearing upon division of estate and alimony payments by resolving certain ambiguities in economic position against the erring partner, he [or she] cannot utilize this variable as a device to affirmatively punish the 'guilty' party." *Tonjes* [*v. Tonjes*, 24 Wis. 2d 120, 126, 128 N.W.2d 446, 450 (1964)]. We read these

---

[6] 1849 Rev. Stats., ch.79, sec. 24. *See also* sec. 247.26, Stats. (1975).

prior cases as significantly limiting the circuit courts' consideration of misconduct.

*Dixon*, 107 Wis. 2d at 504-05, 319 N.W.2d at 852 (footnote omitted). The court then went on to state: "As a result it is unclear under the prior law in what manner the circuit court could have legitimately used marital misconduct in determining alimony without punishing the guilty party." *Id.* at 505, 319 N.W.2d at 852. The circumstances here present an illustration of such legitimate use. Diane is not being punished for her acts; rather, fairness to Todd is being considered. Requiring Todd to pay maintenance to the person who tried to have him killed is fundamentally unfair. Additionally, the trial court did not punish Diane by refusing her maintenance, it merely refused to reward her for her failure; if Diane had been successful in having Todd killed, she would receive no maintenance. We conclude that this final line of reasoning for the supreme court's determination that marital misconduct cannot be considered when ordering alimony also fails to apply to our fact situation.

We conclude that construing sec. 767.26, Stats., as prohibiting the trial court from considering Diane's attempt to have her former husband killed would achieve an unreasonable result: Diane would receive maintenance of approximately $1,000 a month, whereas if she had been successful in her attempt, she would receive nothing. Because we conclude that the reasoning behind the broad conclusion in *Dixon*, that the legislature did not intend for marital misconduct to be considered when determining maintenance, does not apply to the circumstances at hand, we conclude that the trial court did not misapply the law by considering Diane's solicitation to kill her former husband

and, consequently, did not erroneously exercise its discretion.

Diane next argues that even if the trial court could properly consider her solicitation conviction, the trial court abused its discretion by denying maintenance to Diane altogether. We do not agree.

A discretionary determination by the trial court must be "the product of a rational mental process by which the facts of record and the law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Again, a trial court erroneously exercises its discretion if it misapplies or fails to apply any of the statutory factors, or if it fails to give full play to the dual objectives of maintenance. *Forester*, 174 Wis. 2d at 86, 496 N.W.2d at 774.

No one contends that the trial court did not appropriately apply the first nine criteria of sec. 767.26, Stats. When the court did so it found that, according to these factors alone, Diane would be entitled to approximately $1,000 per month. Further, we have already determined that the trial court did not misapply the tenth factor when it considered Diane's conviction for solicitation.

Therefore, we turn to whether the trial court gave full play to the dual objectives of support and maintenance. We hold that it did. The trial court went through the rational mental process of considering Diane's support needs, and determined that they were approximately $1,000 per month. The court then considered the fairness objective. The court determined that to award Diane maintenance now, when she

283

would have received nothing if her attempt to have her husband killed was successful, would be unfair. It is likely that the trial court also considered the unfairness involved in requiring Todd to pay maintenance to a woman who tried to end his life, and whose earning capacity is reduced because, as a result of her attempt, she is a convicted felon. When the trial court weighed the unfairness of awarding Diane maintenance under these circumstances against the support objective, it came to a reasonable determination that Diane was not entitled to maintenance. The trial court correctly applied the statutory factors, gave full play to the dual objectives of maintenance and arrived at a reasonable determination through a rational mental process. *See Hartung,* 102 Wis. 2d at 66, 306 N.W.2d at 28. As a result, we conclude that the trial court did not erroneously exercise its discretion in denying Diane maintenance altogether.

 *By the Court.*—Order affirmed.