**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 17, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1658**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017FA537

**IN COURT OF APPEALS**
**DISTRICT III**

IN RE THE MARRIAGE OF:

NANCY MAE GEIDEL,

PETITIONER-RESPONDENT,

V.

DAVID ALBERT CAROW,

RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: CARRIE A. SCHNEIDER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1     PER CURIAM. David Carow appeals the spousal maintenance portion of a judgment dissolving his marriage to Nancy Geidel. Carow argues that the circuit court erroneously exercised its discretion by misapplying, or failing to apply, all of the statutory factors governing maintenance, and by failing to fully consider the fairness and support objectives before setting the maintenance award. We reject Carow's arguments and affirm the judgment.

## BACKGROUND

¶2     Carow and Geidel were married in September 2004, and Geidel filed for divorce in July 2017. Each party has adult children from previous marriages, but the parties had no children together. Geidel worked at Honey Baked Hams, earning $16,900 annually plus approximately $2,132 in tips. Geidel also worked at the YMCA, earning $1,795 annually. Carow was a senior information management engineer for a financial services company, earning a gross annual income of approximately $110,000. At the time of the divorce hearing, there were several contested issues, including that of spousal maintenance.

¶3     Geidel requested monthly maintenance in the amount of $3,500 for seven years, and Carow requested that any monthly maintenance be limited to approximately $1,273 for no more than four years. After three days of hearings, the circuit court awarded Geidel monthly maintenance of $3,268 for three years followed by $3,122 per month for three years. This appeal follows.

## DISCUSSION

¶4     Upon a judgment of divorce, the circuit court "may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering" those factors listed under WIS. STAT. § 767.56(1c)

(2017-18).[1]  On review, the question is whether the court's application of the statutory factors achieves both the support and fairness objectives of maintenance.

---

[1] WISCONSIN STAT. § 767.56(1c) provides:

Upon a judgment of annulment, divorce, or legal separation, or in rendering a judgment in an action under s. 767.001(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time … after considering all of the following:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.61.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, if the repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

(continued)

3

*Forester v. Forester*, 174 Wis. 2d 78, 84-85, 496 N.W.2d 771 (Ct. App. 1993). The first objective is to support the recipient spouse in accordance with the needs and earning capacities of the parties. *LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987). "The goal of the support objective of maintenance is to provide the recipient spouse with support at pre-divorce standards." *Fowler v. Fowler*, 158 Wis. 2d 508, 520, 463 N.W.2d 370 (Ct. App. 1990). The goal of the fairness objective is "to ensure a fair and equitable financial arrangement between the parties in each individual case." *King v. King*, 224 Wis. 2d 235, 249, 590 N.W.2d 480 (1999) (citation omitted).

¶5    The determination of maintenance is a matter entrusted to the circuit court's sound discretion. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). We will uphold a discretionary determination "as long as the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. Further, when the circuit court does not explain its reason for a discretionary decision, we may search the record to determine whether it supports a circuit court's decision. *See Finley v. Finley*, 2002 WI App 144, ¶19, 256 Wis. 2d 508, 648 N.W.2d 536.

¶6    Here, Carow argues the circuit court erroneously exercised its discretion by misapplying, or failing to apply, all of the factors in Wis. Stat. § 767.56(1c) in determining the duration and amount of maintenance. The circuit

---

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

court, however, need only consider the relevant factors and does not need to consider every factor. *See* ***Trattles v. Trattles***, 126 Wis. 2d 219, 228, 376 N.W.2d 379 (Ct. App. 1985). Moreover, there is no mechanical formula with respect to discretionary determinations such as maintenance. ***Gerth v. Gerth***, 159 Wis. 2d 678, 682-84, 465 N.W.2d 507 (Ct. App. 1990). Carow nevertheless argues that the court recognized the statutory factors in form, but it ignored them in substance. We disagree.

¶7    In its written decision, the circuit court stated it had analyzed the statutory factors "including the length of the marriage, the age, physical and emotional health of the parties, the division of property, the earning capacity of the parties and other factors," adding that its application of the factors to this case focused "on both the fairness and support objectives of maintenance." The record included testimony regarding the parties' ages, earning capacities, Geidel's mental and physical health, and Carow's medical conditions. The court noted the marriage was just under fourteen years in length; it was a second marriage for both parties; and each party brought minor children into the marriage.

¶8    The circuit court recounted that it had attempted to equalize the division of assets and debts between the parties, and it had heard testimony related to the parties' respective salaries and prospective incomes. Although the court made no particular findings regarding the parties' standard of living during the marriage, Carow testified that their standard of living was "stretched," and Geidel testified they were living "paycheck to paycheck." The record shows that the parties owned a timeshare condominium, as well as a home with an orchard, vineyard, and an extensive garden. Carow was able to contribute $550 per month to his retirement account and $455 per month to his health savings account. The

parties also had approximately $30,000 in credit card debt, loans on each of their vehicles, and a $150,000 mortgage.

¶9     The circuit court noted that during the marriage, Geidel "stayed at home raising the minor children" and held "limited jobs," doing canning, cleaning, and other work.[2]     The court determined that the parties had agreed to this arrangement and that Geidel's care for the minor children contributed to Carow's ability to maintain a highly demanding job.     The court noted that Geidel had recently re-entered the workforce, working multiple positions to reach full-time hours.     Trial testimony also showed that Geidel suffered from anxiety, depression, post-traumatic stress disorder, and fibromyalgia.     Noting that it had heard extensive testimony regarding Geidel's employment history, the court ultimately determined Geidel had an annual earning capacity of $22,087.     With a stated focus on the support and fairness objectives, the court deemed it appropriate to award Geidel maintenance for a period of six years, noting Geidel expressed an interest in returning to school for further education.     Given Geidel's earning capacity of $22,087 and Carow's income of $110,000, the court sought to equalize the parties' income initially as well as provide Geidel with sufficient funds to meet her monthly needs and ordered monthly maintenance payments of $3,268, with a step down to payments of $3,122 per month after three years.

¶10     Carow suggests it was unfair to award Geidel maintenance in an amount exceeding the amount of any increase in his earnings during their marriage.     Specifically, Carow points out that although his income increased by

---

[2] Geidel's children, aged ten and thirteen at the time of the marriage, lived almost exclusively with the couple.  Carow likewise had primary placement of his three children, who were aged eleven, eighteen, and twenty at the time of the marriage.

less than $27,000 during the marriage, Geidel will be receiving an annual maintenance amount of more than $39,216 for the first three years and $37,464 per year for the next three years. Carow, however, provides no support for his claim that the maintenance award should be limited to no more than the annual increase in earnings that Carow received during the marriage. To the extent Carow asserts that Geidel will be leaving the marriage with a standard of living much higher than her standard of living when she entered the marriage, maintenance is measured by the parties' lifestyle immediately before *the divorce*. *See Hefty v. Hefty*, 172 Wis. 2d 124, 134, 493 N.W.2d 33 (1992).

¶11    Carow also asserts Geidel was awarded more maintenance than she needed because she was meeting her budgetary needs on the $1,200 in temporary monthly maintenance he paid her during the pendency of the divorce. However, during the time Geidel was receiving temporary maintenance, Carow was also responsible for paying the majority of the family's expenses, including the house payment, the line of credit, taxes, credit cards, insurance, car loans, a student loan, and cell phone bills. Post-divorce, however, Carow will not be responsible for Geidel's debts and expenses. In addition, Geidel testified that even though Carow contributed to those expenses before the final hearing, her income combined with the temporary maintenance was "just enough to make it through the month," and necessitated her use of credit cards for any unforeseen expenses.

¶12    Citing *Ladwig v. Ladwig*, 2010 WI App 78, 325 Wis. 2d 497, 785 N.W.2d 664, Carow also contends that the presumption of an equal division of income was not warranted because this was not a "long-term marriage." In *Ladwig*, this court recognized that a thirteen-year marriage was "not a long-term marriage necessitating as a starting point a presumption of an equal division of income." *Id.*, ¶18. Nothing in the circuit court's decision here, however, suggests

that it believed the length of the parties' marriage necessitated an equal division of income. Rather, the court, in a reasonable exercise of its discretion, opted for an equalization of incomes for maintenance purposes. *See **Bahr v. Bahr***, 107 Wis. 2d 72, 85, 318 N.W.2d 391 (1982) ("It would seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties."). Here, the maintenance awarded to Geidel closely matches the monthly expenses reflected in her financial disclosure statement.

¶13 Carow nevertheless asserts that the increase in monthly maintenance from the $1,200 temporary order to $3,268 renders Geidel ineligible for reduced health insurance premiums under the Affordable Care Act, potentially increasing her monthly premium from $45 to $800. Carow, however, provides no basis to claim that the maintenance award should be limited so that Geidel can obtain cheaper insurance but otherwise be unable to pay her monthly expenses. To the extent Carow suggests that Geidel could decrease her monthly expenses by paying off her debts with some of the retirement funds she received in the divorce, he provides no authority for that proposition. In addition, Geidel would incur a significant tax penalty by liquidating retirement funds. Moreover, as our supreme court posited, there is no reason why a spouse should liquidate her capital to pay living expenses, while her husband's salary and retirement fund remain intact. *LaRocque*, 139 Wis. 2d at 34-35.

¶14 Ultimately, Carow does not establish that any of the facts upon which the circuit court made its decision are clearly erroneous. In fact, Carow's reply brief acknowledges that the facts cited in Geidel's brief "accurately recite facts of record and findings by the [circuit] court." Carow instead asserts that "other" facts of record contradict the facts cited in Geidel's brief and the court's

8

findings. Carow's objections, however, merely constitute a disagreement with the court's analysis and ultimate order.

¶15    In effect, Carow is asking this court to view the evidence differently than the circuit court viewed it, with an emphasis on evidence that best supports his position.  That is not appropriate under our standard of review.  As our supreme court recognized, "a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach[.]"  *Hartung*, 102 Wis. 2d at 66.  As discussed above, the circuit court considered relevant statutory factors and arrived at a decision which a reasonable judge could reach while properly considering the support and fairness objectives of maintenance.[3]

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] We note that Geidel cites an unpublished per curiam opinion in her brief, and Carow cites the same opinion in responding to Geidel's arguments without alerting this court that the citation violates our appellate rules.  WISCONSIN STAT. RULE 809.23(3)(a) prohibits citation of unpublished opinions as precedent or authority, "except to support a claim of claim preclusion, issue preclusion, or the law of the case, and except as provided in par. (b)."  RULE 809.23(3)(b), in turn, states that *authored*, unpublished opinions issued on or after July 1, 2009, may be cited for their persuasive value.  The unpublished per curiam opinion was not used to support a claim of claim preclusion, issue preclusion, or the law of the case.  We admonish the parties that improper citation to unpublished opinions in the future may result in sanctions.