COURT OF APPEALS
DECISION
DATED AND FILED

**February 25, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP2343**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021FA188

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

DANIEL P. SILVEY,

    PETITIONER-APPELLANT,

  V.

MARIA SILVEY,

    RESPONDENT-RESPONDENT.

APPEAL from a judgment of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Affirmed.*

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daniel P. Silvey appeals from a judgment of divorce. He challenges the circuit court's business valuation, income imputation to him for child support purposes, and aspects of the property division. We reject Daniel's arguments and affirm.

## BACKGROUND

¶2 Daniel and Maria were married in 2010 and have two minor children as a result of the marriage. Daniel petitioned for divorce in 2021. For many years the couple ran GTA, a tax consulting service that helped corporate clients prepare financial statements and income tax returns. Daniel played a "sales role," bringing in clients and managing contracts, while Maria prepared taxes and handled business operations. The parties' finances became a central issue for trial, with disputes involving business valuation, earning capacity, and property division.

¶3 Following a two-day trial in March 2023, the circuit court entered a judgment of divorce. The court granted Maria sole legal custody and primary physical placement due to domestic abuse. The court also found that Daniel's imputed income for child support purposes was $422,000, in line with his prior average income during the preceding five years as reflected on his social security statement. For property division purposes, the court found Maria's $434,000 valuation of GTA credible. It awarded the parties their premarital retirement accounts but declined to give Daniel a requested $100,000 offset for a premarital Texas property that he had sold during the marriage. Daniel now appeals.

## DISCUSSION

¶4 The issues Daniel presents on appeal can be categorized in three ways. First, he argues the circuit court's adoption of Maria's business valuation

2

was clearly erroneous. Second, he challenges the court's imputation of income to him in line with his reported earnings for social security purposes. Finally, he raises several issues regarding the property division, including an allegation of double counting and a challenge to the court's refusal to exclude $100,000 from the marital estate for real property he brought to the marriage. For the reasons set forth below, we reject Daniel's arguments.

*I. Business Valuation*

¶5 The valuation of a business for property division purposes is a finding of fact that we will not disturb unless it is clearly erroneous. ***Schorer v. Schorer***, 177 Wis. 2d 387, 396, 501 N.W.2d 916 (Ct. App. 1993). A finding of fact is clearly erroneous when it is contrary to the great weight and clear preponderance of the evidence. ***Id.*** Under that standard, we will affirm as long as the evidence would permit a reasonable person to make the same finding, even though the evidence would have also permitted a contrary finding. ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

¶6 Here, the evidence was such that the circuit court could reasonably conclude that the business was properly valued as of the end of 2021. The court was confronted with two competing valuations: Daniel suggested the business had zero value, while Maria argued the business should be valued at $434,140, its liquidation value as of December 31, 2021. Maria argued that Daniel's zero valuation was based on his extraction of retained earnings from the company for personal expenses and debts that were supposed to have come from his own income, not marital assets.

¶7 Maria testified about her process for arriving at a $434,140 valuation. She testified she had used bank and credit statements, accounting

records for the business, and billing and other records Daniel had provided for 2021. The value of the business, according to Maria, is "cash, plus accounts receivable, minus accounts payable, minus the liabilities." Maria testified to errors Daniel had made in accounts receivable, including a nearly $100,000 error in the beginning receivables balance. Additionally, she testified that Daniel had withdrawn significant sums from the business without replenishing the business balances with additional work, thereby artificially reducing the business value. Compounding matters, Maria testified she had not received complete business information for 2022, including tax documents for two of the business's largest clients.

¶8     There was good reason for the circuit court to be skeptical of Daniel's valuation. Daniel acknowledged at trial that he had taken "roughly" $250,000 in personal distributions from the business in 2022. While Daniel claimed that about half of that amount was to cover Maria's share of the expenses, at least some of the money was used to pay down credit card debt that intermingled shared expenses with Daniel's personal expenses, like attorney fees. Additionally, Daniel admitted he had made errors on the business's 2021 tax return and on his expense sheet.

¶9     The extreme reduction in Daniel's ability to generate business income was also concerning to the circuit court. Daniel testified that beginning in 2021, GTA had lost major clients due to restructuring or acquisitions.[1] Nonetheless, by the estimate of both parties, the business still had significant

---

[1] Maria's testimony cast doubt on this assertion, including because the business was bringing on new consultants during the time that Daniel claimed to be losing clients.

account receivables at the end of 2021. But in 2022, Daniel reduced his billable hours to just 113 total hours. Prior to 2022, Daniel had worked about 1,600 hours per year on average.

¶10    The circuit court could reasonably conclude from this evidence that Daniel had reduced his work and was living off the business assets in an effort to artificially suppress the business value. The court's decision to value the business in line with Maria's proposed valuation was not clearly erroneous.

## II.  Income Imputation for Child Support

¶11    Daniel also challenges the circuit court's imputation of income to him for child support purposes. Chronicling Daniel's reported earnings over time, the court noted that during Daniel's prior divorce and the present case, Daniel's reported income reduced to zero. Between 2013 and 2020, Daniel's reported earnings varied between approximately $240,000 and $685,207. Based on the testimony, the court concluded that Daniel "unreasonably lowers his income during the divorce." The court found that Daniel's earning capacity was $422,000, based on the average of his earnings in recent years.

¶12    For child support purposes, a circuit court may consider a parent's earning capacity rather than the parent's actual earnings if it concludes that a party's employment decision to forego or reduce income is voluntary and unreasonable under the circumstances. *Becker v. Becker*, 2014 WI App 76, ¶16, 355 Wis. 2d 529, 851 N.W.2d 816. It is not necessary for a court to find that a former spouse deliberately reduced earnings to avoid support obligations or to gain an advantage over the other party. *Id.* The application of the legal standard, reasonableness, to the facts is a question of law we review independently, but with

5

appropriate deference to the circuit court because the determination of reasonableness is "extensively intertwined" with factual conclusions. *Id.*, ¶17.

¶13    Here, we agree with the circuit court's conclusion that Daniel's reduced earnings were voluntary and unreasonable under the circumstances. As the court noted, Daniel did not offer much in the way of explanation for his refusal to seek out new clients for the business. The main difficulty seems to have been Daniel's need to hire operational assistance, but Daniel gave a variety of explanations for not doing so: he did not want to manage an employee, he did not trust others with his money, he would still have to do some of the work himself, and his ability to spend time with his children would suffer. The court was unmoved by these explanations.

¶14    Additionally, the circuit court placed significant weight on Daniel's social security statement, which he had been reluctant to produce during the litigation. The statement showed reported earnings over time, and it was specific to Daniel. Daniel points to testimony that suggests that the social security statement actually reflects earnings by both him and Maria, but Maria's post-trial brief chronicled the considerable difficulties with identifying what Daniel's actual post-separation earnings were. Under these circumstances, it was not unreasonable for the court to use Daniel's historical reported earnings to calculate his earning capacity.

*III. Property Division*

¶15    Daniel next argues that the circuit court impermissibly double-counted property and income when it imputed income to Daniel for child support purposes and also assigned him the value of GTA as of 2021 for property division purposes. Daniel is generally correct that double counting of an asset for

property division purposes is not permitted. *See Forester v. Forester*, 174 Wis. 2d 78, 92, 496 N.W.2d 771 (Ct. App. 1993).

¶16    But Daniel errs by suggesting that double counting occurs when a circuit court sets the value of a marital asset for property division and then imputes income to establish earning capacity for ongoing child support. Child support can be a fixed sum, but more typically—and in this case—it is expressed as a percentage of the payer's income. *See* WIS. STAT. § 767.511(1)(a) (2023-24).[2] Ongoing support orders can be modified as set forth in WIS. STAT. § 767.59 based upon a substantial change in circumstances, which can include a change in the payer's earning capacity. *See* § 767.59(1f)(c)3.

¶17    By contrast, property division divides the parties' property as of the date of divorce. *See* WIS. STAT. § 767.61(1). Because there is a presumption of equal division, the property often must be valued. *See* § 767.61(3). But this is a static factor—what is the value of the marital property so that it may be equitably divided? Application of marital property—including a marital business valued at a particular amount at a particular moment in time—does not constitute improper double counting when that valuation is informed by the parties' past earnings, which are then also used to determine prospective earning capacity for child support purposes.

¶18    *Forester* does not state otherwise. There, we cautioned the circuit court against double counting a law practice's accounts receivable and work in progress, observing "this income stream may be used *either* to pay maintenance *or*

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

for business valuation purposes." ***Forester***, 174 Wis. 2d at 93 (alteration in original). But the law firm in ***Forester*** was a going concern by a solo practitioner and had substantial business debts. Our observation was a counter to the spouse's assertion that the debts were properly excluded from the firm valuation because the income stream from the business could be used to pay down the debt. Here, Daniel admits there is no longer an income stream from the business; the child support award concerned only what the court considered to be Daniel's prospective earning capacity in comparable work. Nothing in ***Forester*** proscribes the use of past financial information to establish a spouse's earning capacity for child support purposes.

¶19 Daniel also argues the circuit court erred in the property division when it awarded the parties credit for the premarital value of their retirement accounts but failed to award Daniel the premarital value of a Texas rental home that was sold during the marriage. "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce." ***Derr v. Derr***, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170. The burden of showing property is exempt from division falls on the party asserting the exemption. ***Brandt v. Brandt***, 145 Wis. 2d 394, 408, 427 N.W.2d 126 (Ct. App. 1988).

¶20 The Texas home was acquired by Daniel prior to the marriage. Daniel and Maria sold it during the marriage for a net profit of approximately $334,000, much of which they used for a down payment on their marital home. The circuit court declined to award Daniel a $100,000 offset to any ordered equalization payment "for the cash from the real estate" that he had brought into the marriage.

¶21   As the circuit court recognized, Daniel's request for a $100,000 offset was largely unexplained.  In court—as Daniel does now on appeal—he linked the offset request with the treatment of the parties' premarital retirement accounts, which the court concluded would be excluded from the property division.  Daniel does not explain why it was necessary for the court to treat those assets similarly, nor does he challenge the exclusion of his retirement account from the marital estate.

¶22   The circuit court did not err by including the entire proceeds from the sale of the Texas home in the property division.  The parties disagreed about whether marital funds were invested in the home prior to its sale.  Daniel testified that the rent covered all expenses, while Maria testified the parties used joint funds to cover the repairs and expenses on the house.  This testimony presented a credibility contest for which the court was the ultimate arbiter.  *See Noble v. Noble*, 2005 WI App 227, ¶16, 287 Wis. 2d 699, 706 N.W.2d 166.

¶23   Even if the exclusion of each party's retirement accounts produced an unequal division, Daniel has not demonstrated that such a result warrants reversal.  The division of property in a divorce action is reviewed for an erroneous exercise of discretion.  *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789.  His arguments are not directed at the unequal division per se, but rather the notion that he was entitled to an additional $100,000 offset based upon the exclusion of that amount from the marital estate.  Having addressed that matter, we need not go further.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.