IN RE the MARRIAGE OF:

Michael A. LUCIANI, Petitioner-Appellant,

v.

Angelina MONTEMURRO-LUCIANI, Respondent-Respondent.†

Court of Appeals

*No. 93–2899. Submitted on briefs July 27, 1994.—Decided January 11, 1995.*

(Also reported in 528 N.W.2d 477.)

†Petition to review granted.

*See Callaghan's Wisconsin Digest, same topic and section number.

69

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Thomas W. Anderson, Jr.* of *Anderson, Sumpter & Anderson, S.C.* of Kenosha.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Donald E. Mayew* of *Phillips, Richards, Mayew & Corrigall, S.C.* of Kenosha.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. Michael A. Luciani appeals from the support, maintenance and income tax exemption provisions of a judgment of divorce. We reverse the support and income tax exemption provisions of the judgment. We affirm the maintenance provision. We remand for further proceedings.

Michael and Angelina Montemurro-Luciani were married in 1986, each at the age of thirty-two years. Angelina is a physician. At the time of the marriage, Angelina was completing her medical residency program. She completed this effort and opened a private medical practice in 1988. Throughout the marriage Michael was employed as a lab technician at Modine Manufacturing Company in Racine.

71

According to the parties' W-2 forms, their respective incomes from 1987 through 1992 were as follows:

|  | Michael | Angelina |
|------|---------|----------|
| 1987 | $ 22,000 | $ 22,000 |
| 1988 | 26,571 | 14,273 |
| 1989 | 25,789 | 69,060 |
| 1990 | 31,342 | 121,809 |
| 1991 | 29,393 | 131,915 |
| 1992 | 33,177 | 132,857[1] |

Two children, ages four and three at the time of trial, were born to the marriage. The parties stipulated that they should have joint legal custody with primary physical placement to Angelina. The stipulation also provided liberal physical placement with Michael amounting to approximately 117 overnight days and forty-nine nonovernight days per year. The family court approved this stipulation and included its provisions in the judgment.

The matter went to trial in January 1993 on a variety of disputed issues.[2] Regarding the appellate issues, the family court fixed Michael's child support

[1] Actually, Angelina earned more gross income in 1991 ($158,935) and 1992 ($145,201) than reported on her W–2 forms. The lesser figures were the result of Angelina's contributions to a retirement plan. For some of the years indicated, Michael also earned slightly more than his W–2 reported income. This was because of contributions he had made to a tax-deferred stock plan.

[2] Besides the appellate issues, the other disputed issues were property division, debt allocation, attorney's fees, beneficiary designation regarding certain insurance policies and placement of the children during certain holiday periods.

obligation pursuant to the shared-time payer provisions of the percentage standards. *See* WIS. ADM. CODE § HSS 80.04(2). In addition, the court awarded Michael maintenance of $1000 per month for thirty-six months. Finally, the court awarded Angelina the two children as exemptions for income tax purposes. Michael appeals.

## CHILD SUPPORT

Michael urged the family court to not apply the percentage standards. In support, Michael noted the significant disparity between the parties' incomes and the substantial physical placement of the children with him pursuant to the parties' stipulation. Instead, Michael proposed that the court obligate each party to provide support while the children were physically placed with such parent.

Angelina argued that the family court should fix Michael's support obligations pursuant to the "shared-time payer" provisions of WIS. ADM. CODE §§ HSS 80.02(22) and 80.04(2). Using this method, Angelina requested annual child support in the amount of $8133.84.

In its initial written decision, the family court appeared to fix Michael's support obligation pursuant to a straight application of the percentage guidelines. We recite the full text of the court's written decision regarding child support:

> While there is certainly a huge disparity in the incomes of these two parties, there is nothing in the evidence which would warrant a finding that unfairness will result to Dr. Montemurro, Mr. Luciani or the children by application of the legally-prescribed formula for computing the child support obligation. Indeed, I feel that deviation from it

73

would have a strong potential for damage to the relationship of the parties: of Dr. Montemurro feeling that Mr. Luciani's parental rights are diminished because she is carrying the whole financial load; of the children feeling that their father is less important than their mother or disinterested in them or unwilling to sacrifice for them; of Mr. Luciani feeling that he is not carrying his fair share. All of these can be avoided with Mr. Luciani paying support in accord with the formula, and it is therefore adopted as the Court's order.

Following this decision, the family court issued a supplemental decision, clarifying that Michael's support obligation had been fixed pursuant to the shared-time provisions of the administrative code. This served to place Michael's support obligation at twenty-four percent of his gross income.[3] In this decision, the court again rejected Michael's continuing argument that the court not use the percentage standards.[4] Instead, the court confirmed its initial decision that the application of the percentage standards would not be unfair to either party or the children. The court held, inter alia, that Michael had the financial resources to pay the amount of support called for under the standards and that Michael's standard of living would not be

---

[3] The family court's decision does not expressly state that Michael's obligation computes out to twenty-four percent pursuant to the shared-time payer provisions of the administrative code. Instead, the supplemental decision merely says that Michael's obligation is fixed pursuant to that formula. Angelina represents in her appellate brief that this computes to twenty-four percent of Michael's income. Michael does not dispute this calculation. We accept that figure for purposes of this appeal.

[4] The appellate record is not clear whether the family court issued the clarification decision on its own motion or whether one of the parties moved for such action.

adversely affected by the application of the standards. The court also stated that it had considered the substantial period of physical placement granted to Michael and the substantial disparity in the parties' incomes.

The family court further stated in its supplemental decision:

> It is important to note that while it may appear to some that it is "unfair" for Mr. Luciani to be required to pay such a large percentage of his income when his ex-wife is earning a much higher income, that this is no more "unfair" than it is for someone who earns the same salary as Mr. Luciani and who also lives apart from the two children to pay far more than Mr. Luciani because his ex-wife earns far less than Dr. Montemurro.

■

The determination of child support is committed to the discretion of the family court. *Weidner v. W.G.N.*, 131 Wis. 2d 301, 315, 388 N.W.2d 615, 622 (1986). Section 767.25(1)(a), STATS., provides that child support may be expressed as a percentage of parental income. The statute also provides that the court shall determine child support payments by using the percentage standards. Section 767.25(1j). However, the statute permits the court to deviate from the presumptive application of the standards if the court finds by the greater weight of the credible evidence that the use of the standards is unfair to the child or to the party requesting such deviation. Section 767.25(1m). In determining whether to deviate from the standards, the statute sets out sixteen factors which might bear upon the question.

In its initial decision, the family court expressed its concern that a deviation from the support guidelines

would work damage to the relationship between all of the parties. The court reasoned: (1) that Angelina might conclude that Michael's parental rights would be diminished if the guidelines were not followed, (2) that the children might feel that Michael is less important than Angelina or less interested in them than Angelina, and (3) that Michael himself might feel that he is not paying his fair share of support.

Although there was no evidence presented regarding these concerns, we cannot deny that these consequences could result from a child support order in a given case. However, our concern *in this case* is that the family court's initial decision to adhere to the percentage standards rests principally on these noneconomic concerns rather than on an in-depth economic analysis of the evidence regarding the needs of the children and both parents' ability to meet those needs.

Although the family court's supplemental decision is lengthier, it is still couched in conclusionary language without an analysis of raw financial data regarding: (1) the specific earnings and budgets of the parties, and (2) the financial effects of the substantial placement period with Michael. Most importantly, the court's decision harks back to the noneconomic factors cited in its initial decision—a matter about which we have already expressed concern.

■

Finally, and most troubling, is the family court's statement in the supplemental decision that the disparity between the parties' incomes has no bearing on the question of adherence to the percentage standards. We particularly disagree with this statement. Despite the presumptive application of the percentage standards, the case law has cautioned against their

robotistic use. *See Hubert v. Hubert,* 159 Wis. 2d 803, 814, 465 N.W.2d 252, 256 (Ct. App. 1990). This is especially so in a high-income case.

Here, of course, we realize that the roles are reversed from *Hubert* because Angelina, as the payee, is the high-income earner, whereas Michael, the payer, is not. Regardless, we disagree with the family court that the income of the payee is an irrelevant consideration on this issue. The statutory factors which the family court may consider when deciding whether to adhere to the percentage standards expressly include "[t]he earning capacity of *each parent.*"[5] Section 767.25(1m)(hs), STATS. (emphasis added).

We conclude that the family court erred in the exercise of its discretion by treating the parties' disparate incomes as an irrelevant factor and by failing to analyze the economic consequences of the support order in light of the parties' budgets, incomes and nearly equal child placement provisions.[6] We are not saying that the shared-time provisions of the percent-

---

[5] On a somewhat similar theme, Angelina contends that the amount of support to be paid by the payer under the guidelines is not influenced by the income of the payee. We agree. The standards expect that the custodial parent share his or her income directly with the children. *See* WIS. ADM. CODE ch. HSS 80, *Preface.* Here, however, the issue is whether the family court properly chose to adhere to the standards in the first instance. It is not whether the court correctly computed Michael's support obligation under the standards. This is a subtle but important distinction.

[6] Angelina argues that Michael's attack is on the mechanics of the shared-time formula set out in WIS. ADM. CODE § HSS 80.04(2). We disagree. Michael makes no argument that the family court's computation of his support obligation under the shared-time payer formula was flawed. Rather, he argues

77

age standards cannot ultimately be applied in this case. We simply say that without an analysis of the economic evidence and its impact on the parties, the reasons given by the family court do not support its decision to adhere to the percentage standards.

## MAINTENANCE

Michael next complains that the family court erred by limiting his maintenance award to $1000 for a period of three years.

The determination of the amount and duration of maintenance is entrusted to the trial court's discretion, and this court will not reverse absent an erroneous exercise of discretion. *Brabec v. Brabec*, 181 Wis. 2d 270, 277, 510 N.W.2d 762, 764 (Ct. App. 1993). The court erroneously exercises this discretion if it misapplies or fails to apply any of the statutory factors set out in § 767.26, STATS., or if it fails to give full play to the dual objectives of maintenance. *Brabec*, 181 Wis. 2d at 277, 510 N.W.2d at 764. The dual objectives of maintenance are support and fairness. *Id.*

Michael rests his case on the fairness component of maintenance, contending that he is entitled to compensatory maintenance.[7] He argues that fairness permits him to share in Angelina's recent high income because: (1) that was the expectation of the parties during the marriage, and (2) he provided child-rearing services

---

against the application of the shared-time payer formula on a threshold basis.

[7] Michael also argues that the award is inadequate from a needs or support standpoint. However, he never develops his argument. Instead, his argument focuses on the fairness factor, contending that his contributions to Angelina's medical education call for "compensatory maintenance."

78

and a greater portion of the marital income during the early years of the marriage.

In its written decision, the family court addressed the relevant statutory factors. The court first observed that from a durational standpoint, this was a short-term marriage. However, the court reasoned that the presence of children created a more "permanent" relationship between the parties and served to render the marriage long- (or longer-) term for purposes of maintenance. While we understand the point the family court was making, we disagree that an otherwise short-term marriage is transformed into a longer-term marriage simply because children have been born to the marriage. We are unaware of any case law which measures the term of a marriage by anything other than its duration. Therefore, we reject Michael's argument that we should view this case as a long- (or longer-) term marriage for purposes of maintenance.

Although we disagree with the family court on the preceding point, we agree with the court's other reasons for the limited-term maintenance award in this case. The court observed that the property division left Michael in a far better position than when he entered the marriage, that Michael's standard of living to which he had become accustomed would not be impaired by the divorce, and that Michael had not sacrificed his own career or employment opportunities to advance Angelina's medical education. The court also determined that Michael had not substantially contributed to Angelina's medical education.

Michael does not dispute any of these findings. He contends, however, that because he contributed some child-rearing services and primarily supported the

family during Angelina's residency and the early days of her practice, he is entitled to compensatory maintenance. He contends that the intervention of the divorce should not deprive him from sharing in Angelina's recently arrived high income.

■

We disagree. A party's contribution of child care services and economic support to the family unit during the marriage represents nothing more than what that spouse is legally and morally required to provide. Without more, maintenance is not a vehicle by which a party receives a "refund" for such efforts. Moreover, as the family court correctly noted, this is not a case where Michael sacrificed his career or career opportunities in favor of Angelina's career advancement. To the contrary, Michael's career advanced during the marriage, unaffected and unimpeded by the career pursuits of Angelina.

■

Michael also argues that the family court erred by failing to explain the durational and dollar limits on the maintenance award. We acknowledge that the court's decision does not expressly explain why these particular limits were selected. However, when we review a trial court ruling, we examine not just the four corners of the ruling itself, but also the manner in which the issues evolved in the trial court. *See, e.g., Jacquart v. Jacquart*, 183 Wis. 2d 372, 383-84, 515 N.W.2d 539, 543 (Ct. App. 1994). In so doing, the ruling we review is put in its proper perspective and context.

Michael's argument in the trial court was premised upon his theory of compensatory maintenance. To this end, Michael suggested that he receive maintenance for two years at the rate of one-half of Angelina's gross income, for a total maintenance award of

$145,000.[8] Michael's two-year proposal was premised upon the two-year period during the marriage when Michael had "contributed" his child-rearing services and "contributed" the greater share of economic support for the family. He offered no other theory in support of his maintenance claim.

As noted, the family court rejected Michael's compensatory maintenance approach. Left with no other basis for awarding maintenance, the court might well have properly exercised its discretion by awarding no maintenance. Instead, the court ordered limited-term maintenance of $1000 per month for three years. Given the context in which the maintenance issue was litigated and that Michael offered no concrete alternatives to his compensatory maintenance claim, we see no misuse of discretion in the family court's ultimate maintenance decision.

## INCOME TAX DEPENDENTS

Michael appeals the family court's ruling allowing Angelina the right to claim the two children as dependents for income tax purposes.

At the close of the evidence, the family court directed the parties to submit simultaneous memorandums on the disputed issues. In his memorandum, Michael implicitly acknowledged that under the Internal Revenue Code, Angelina would be entitled to claim the children as exemptions because she had placement of the children for a slight majority of the placement time. However, Michael noted that current tax law gradually phased out a taxpayer's right to take the full

---

[8] Alternatively, Michael argued that he should receive the $145,000 over a period of years to be fixed by the family court.

81

dependent exemption as adjusted gross income progressively increased above a floor of $125,000.[9] Since Angelina's income exceeds this floor, Michael observed that Angelina could not take full advantage of the exemption credit, whereas he could. On this basis, he asked the court to allow him to claim the children as dependents. Angelina's memorandum did not expressly address this issue.

The family court's initial decision did not address the phase-out provisions of the Internal Revenue Code. Instead, the court disposed of this issue in two sentences: "I will not alter the assignment of the tax exemptions for the children prescribed by the Internal Revenue Code.[10] The parties are encouraged, however, to bargain between themselves as circumstances may dictate so that the maximum tax savings can be achieved."

The family court further addressed this issue in its clarification decision. The court acknowledged that under current tax law, "the dependency exemption is phased out and ultimately becomes valueless." Nonetheless, the court confirmed its earlier ruling awarding the exemptions to Angelina. We quote the court in some detail:

Accordingly, I feel that the best course is to award [the exemptions], *by default* to the custodial parent;

[9] Although neither party's brief cites to a particular provision in the Internal Revenue Code, we will assume the parties are referring to I.R.C. § 151(c), (d), which allows taxpayers an exemption for dependent children, subject to a phaseout for taxpayers whose adjusted gross income exceeds the threshold amount specified in the Code.

[10] The parties appear to agree that under the Internal Revenue Code, Angelina is entitled to claim the children as dependents.

as the Internal Revenue Code provides. I suggested that the parties bargain in the future regarding the child dependency exemption, since if [Angelina] achieves nothing or very little as a consequence of her entitlement to it, it is senseless for her to claim it, and it seems to me that there is some compromise amount upon which she and [Michael] could agree as to a market value for it, and it could then be allowed to him by court order. I did not intend . . . to allow the parent who would most benefit from the dependency exemption to be allowed to claim it. There are a variety of reasons why I did not do this, including the fact that I did not wish to invite the Internal Revenue Service to challenge the validity of the exemption to either parent and also because I did not wish to have a situation where each of the parties would be making a good faith claim to the same exemption, thereby triggering a probable audit of each of their returns. [Emphasis added.]

While we understand the family court's good intentions on this matter, we conclude that the reasons stated by the court do not constitute an acceptable basis for awarding the exemptions to Angelina. Essentially, the court said that the Internal Revenue Code would control the issue until the parties had agreed otherwise. The court did so without engaging in any analysis of the real economic effect of its decision on the parties. In so doing, the court sidestepped its decision-making role on a point over which the litigants disagreed. If the parties could not agree as to who could most benefit by taking the exemptions, it was the court's duty to rule on the matter based on the evidence and the applicable law. By its own words, the court acknowledged that it did not perform this function. Instead, the court candidly acknowledged that its rul-

ing on this issue was by "default."[11] We reverse the family court's ruling on this issue.

## CONCLUSION

We reverse the child support and income tax exemption provisions of the judgment. We affirm the maintenance provision. We remand for further proceedings consistent with this opinion.[12]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

---

[11] Angelina argues that Michael failed to present any evidence on this issue. While it may be that additional evidence could have been presented, we also hold that such was not essential to a judicial resolution on this issue. The evidence included the relevant raw data by which the family court could have computed the income tax consequences of its decision to the parties. Indeed, Michael's memorandum laid out such a scenario as viewed from his perspective.

[12] Although we have affirmed the family court's maintenance ruling, we note that the court may revisit this issue if, in the court's discretion, such is warranted by any modifications resulting from the court's further rulings regarding the child support and income tax exemption issues. *See Olson v. Olson*, 186 Wis. 2d 287, 297, 520 N.W.2d 284, 288 (Ct. App. 1994).