IN RE the MARRIAGE OF: Michael A. LUCIANI, Petitioner-Appellant,

v.

Angelina MONTEMURRO-LUCIANI, Respondent-Respondent-Petitioner.

Supreme Court

*No. 93–2899. Oral argument November 1, 1995.—Decided March 7, 1996.*

(Also reported in 544 N.W.2d 561.)

For the respondent-respondent-petitioner there was a brief by *Donald E. Mayew*, and *Phillips, Richards, Mayew & Corrigall, S.C.*, Kenosha and oral argument by *Donald E. Mayew*.

For the petitioner-appellant there was a brief by *Thomas W. Anderson, Jr.* and *Anderson, Sumpter & Anderson, S.C.*, Kenosha and oral argument by *Thomas W. Anderson, Jr.*

JON P. WILCOX, J.   This is a review of a published decision of the court of appeals which affirmed in part and reversed in part the judgment of divorce granted in the circuit court for Kenosha County, Bruce E. Schroeder, Judge. *See Luciani v. Montemurro-Luciani*, 191 Wis. 2d 67, 528 N.W.2d 477 (Ct. App. 1995). The court of appeals affirmed the circuit court's maintenance provision requiring the respondent-

appellant Dr. Angelina Montemurro-Luciani (Dr. Montemurro) to pay the appellant-respondent Michael A. Luciani (Luciani) $1000 per month for 36 months. It reversed the income tax exemption provision as well as the circuit court's child support award based on the statutory percentage guideline standards requiring Luciani to pay 24% of his income to Dr. Montemurro for support for the parties' two minor children. *Id.* at 72-73.

The issue we consider on review is whether the circuit court erroneously exercised its discretion when it did not deviate from the percentage guideline standards, where the payee earns a substantially greater income than the payer. We hold that in the case of a high-income payee, the percentage standards set by administrative regulation[1] presumptively apply, absent a payer's showing of unfairness by the greater weight of the credible evidence. We conclude that the circuit court did not err in applying the percentage standards, and therefore reverse that part of the decision of the court of appeals addressing the issue of child support. We affirm the court of appeals' decision regarding the award of maintenance as well as the tax exemption provision.

The couple, Luciani and Dr. Montemurro, were married in 1986, each at age 32. Dr. Montemurro was in the second year of her medical residency program when the parties were married. In 1988, upon the completion of this program, Dr. Montemurro established her own private medical practice in Kenosha. Luciani was employed as a lab technician at Modine Manufacturing Company in Racine throughout the course of the marriage. The income tax returns for 1987 reported

---

[1] *See* Wis. Admin. Code § HSS 80.03 (June 1993).

near equal earnings of $22,000 for both parties. However, as Dr. Montemurro's medical practice began to expand, so too did the disparity between the parties' respective incomes:

|      | Luciani  | Dr. Montemurro |
|------|----------|----------------|
| 1987 | $22,000  | $22,000        |
| 1988 | 26,571   | 14,273         |
| 1989 | 25,789   | 69,060         |
| 1990 | 31,342   | 121,809        |
| 1991 | 29,393   | 131,915        |
| 1992 | 33,177   | 132,857[2]     |

The divorce action was filed on June 6, 1991. The marriage had produced two children, ages four and three at the time of the trial, who reside with Dr. Montemurro. The circuit court approved the parties' stipulation to joint legal custody and primary physical placement with Dr. Montemurro. The children's physical placement with Luciani is approximately 117 overnights per year, consisting of 32% of the overnight placement, and an additional 49 nonovernight days per year. Dr. Montemurro has the children for the remaining 68% of the overnight placement.

In January 1993, a trial was held in this matter involving a number of issues including property division, debt allocation, attorney's fees, beneficiary designations, and placement of the children during certain holiday periods. We are primarily concerned on

---

[2] As noted by the court of appeals, the figures provided above are understated in some years in comparison to the gross income reported on the parties' W-2 forms. Both Luciani and Dr. Montemurro took advantage of available contributions to a retirement plan as well as a tax deferred stock plan. *Luciani*, 191 Wis. 2d at 72 n.1.

this review with the nature of the dispute regarding the proper amount of child support Dr. Montemurro is entitled to receive as the high-income payee with custody of the children a majority of the time.

Dr. Montemurro argued that the circuit court was required, in accordance with Wis. Stat. § 767.25(1j) (1993-94),[3] to determine the proper amount of child support payments according to the percentage standards established by the Department of Health and Social Services (DHSS). *See* Wis. Admin. Code § HSS 80.03(1)(b) (June 1993).[4] Additionally, she urged the circuit court to calculate Luciani's support obligations pursuant to the shared-time payer provision of the child support percentage standard under Wis. Admin. Code §§ HSS 80.02(23) and 80.04(2) (June 1993). In accord with this method, Dr. Montemurro requested an annual support amount of $8,133.84, or approximately 24% of Luciani's gross income.[5]

---

[3] Section 767.25(1j) provides:

Except as provided in sub. (1m), the court shall determine child support payments by using the percentage standard established by the department of health and social services under s. 46.25(9).

[4] Section HSS 80.03(1)(b) provides:

Determining child support using the percentage standard . . . . The percentage of the payer's base or adjusted base that constitutes the child support obligation shall be:

. . .

(b) 25% for 2 children;

[5] Application of the straight percentage standards would require Luciani to pay 25% of his gross income towards child support. However, because Luciani has the children for 32% of the overnight placement, the court is required to reduce this figure in accord with the "shared-time" formula provided in § HSS Table 80.04(2)(b) (i.e., 93.34%). Luciani's proper support obligation is therefore 24% of his gross income.

██ Luciani argued that the circuit court should not apply the percentage standards in this case. Asserting that the court should consider the substantial physical placement of the children with him pursuant to the parties' stipulation and the significant disparity between the parties' incomes, Luciani maintains that the court should have deviated from the presumptive application of the percentage standards, as allowed under Wis. Stat. § 767.25(1m) (1993-94).[6] In determining whether to deviate from the standards, the statute sets out 16 factors for the court to consider when addressing this question. *See* § 767.25(1m)(a)-(i) (1993-94). If the court finds that application of the percentage standards would be unfair, Wis. Stat. § 767.25(1n) (1993-94)[7] requires the court to state in writing or on the record the alternative support amount, as well as the basis for the modification. Luciani claimed that applying the percentage standards in this case would be fundamentally unfair, as Dr. Montemurro's income

---

[6] Section 767.25(1m) provides:

> Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:
>
> . . . .

[7] Section 767.25(1n) provides:

> If the court finds under sub. (1m) that use of the percentage standard is unfair to the child or the requesting party, the court shall state in writing or on the record the amount of support that would be required by using the percentage standard, the amount by which the court's order deviates from that amount, its reasons for finding that use of the percentage standard is unfair to the child or the party, its reasons for the amount of the modification and the basis for the modification.

greatly exceeded his own. Luciani proposed that the court obligate each party to provide necessary support while the children were physically placed with each respective parent.

Following the trial, a judgment of divorce was granted on September 22, 1993. In the initial decision issued by the circuit court, Luciani's child support obligation was established by straight application of the percentage standards, although it did not specify a precise dollar amount. The particular subsection of the circuit court's decision regarding child support is provided in full:

> While there is certainly a huge disparity in the incomes of these two parties, there is nothing in the evidence which would warrant a finding that unfairness will result to Dr. Montemurro, Mr. Luciani or the children by application of the legally-prescribed formula for computing the child support obligation. Indeed, I feel that deviation would have a strong potential for damage to the relationship of the parties: of Dr. Montemurro feeling that Mr. Luciani's parental rights are diminished because she is carrying the whole financial load; of the children feeling that their father is less important than their mother or disinterested in them or unwilling to sacrifice for them; of Mr. Luciani feeling that he is not carrying his fair share. All of these can be avoided with Mr. Luciani paying support in accord with the formula, and it is therefore adopted as the Court's order.

In response to concerns expressed by the parties in letter briefs following the decision, the circuit court thereafter issued a supplemental decision clarifying that Luciani's support obligation was in fact intended to be based on the shared-time provisions of the Admin-

istrative Code, thereby reducing his support to 24% of gross income based on the percentage of overnight placement attributed to him. In addition, the court confirmed its initial decision that there was no evidence or testimony presented that would warrant a finding that employment of the percentage guideline standards would be unfair to the children or either party. The court rejected Luciani's request to deviate based upon a claim of unfairness.

In support of its original decision to adhere to the percentage standards, the circuit court examined several of the statutorily identified factors which would permit deviation if demonstrated by the greater weight of the credible evidence. *See* Wis. Stat. § 767.25(1m)(a)-(i) (1993-94). The court articulated its analysis of such factors by noting that there was no evidence presented that the children's welfare would suffer, that either party lacked financial resources sufficient to make the prescribed support contributions, or that Luciani would be unable to support himself at the same level he enjoyed during the marriage after payment of the child support. Moreover, the court stated that it had considered the cost of daycare, the substantial period of physical placement with Luciani and Dr. Montemurro's far greater earning capacity. Declining to deviate from the percentage standards, the court further stated:

It is important to note that while it may appear to some that it is "unfair" for Mr. Luciani to be required to pay such a large percentage of his income when his ex-wife is earning a much higher income, that this is no more "unfair" than it is for someone who earns the same salary as Mr. Luciani and who also lives apart from two children to pay

290

far more than Mr. Luciani because his ex-wife earns far less than Dr. Montemurro.

In affirming this decision, the circuit court also reiterated the non-economic considerations encompassed in the initial decision relating to the potential damage to the parties' relationship and the negative perception of Luciani that may have been harbored by the children if the court were to deviate from application of the percentage standards. Along with the order for child support, the circuit court ordered Dr. Montemurro to pay Luciani $1000 per month in maintenance for 36 months.

Luciani appealed the circuit court's order. The court of appeals affirmed the issue of maintenance but reversed the child support portion of the decision. The court of appeals criticized the initial decision, expressing dissatisfaction with the circuit court's principal reliance on the non-statutory, non-economic concerns rather than an in-depth economic analysis of the raw financial data available in the record. *Luciani*, 191 Wis. 2d at 76.

The court of appeals expressed similar concern with the supplemental decision as well. The court concluded that it was couched in non-statutory conclusionary language that lacked the appropriate examination of the disparate incomes and the financial effects of substantial physical placement with Luciani. *Id.* at 76. Furthermore, the court expressed a troubling concern with its reading of the circuit court's decision as stating that the disparity between the parties' incomes has no bearing on the question of adherence to the percentage standards. *Id.* at 76-77. The court voiced its disagreement with such a proposition, noting that *Hubert v. Hubert*, 159 Wis. 2d 803, 465 N.W.2d 252 (Ct. App. 1990) had specifically cautioned against

291

the robotistic use of the percentage standards, especially in high-income cases.[8] *Id.* at 814.

The appellate court's decision concluded that the circuit court "erred in the exercise of its discretion by treating the parties' disparate incomes as an irrelevant factor and by failing to analyze the economic consequences of the support order in light of the parties'

[8] The court of appeals recognized that this particular case was the converse of the *Hubert* decision, as here the payee (Dr. Montemurro), not the payer (Luciani), was the high-income earner. Nevertheless, the court stated that consideration of "the earning capacity of each parent" was an express factor under Wis. Stat. § 767.25(1m)(hs) (1993-94) to be considered upon a request to deviate from the percentage standards, and disagreed with its reading of the circuit court treatment of the issue as irrelevant.

budgets, incomes and nearly equal child placement[9] provisions."[10] *Id.* at 77-78.

[9] The court of appeals' representation of the child-placement as 'nearly equal' is unsupported by the record. Under the shared-time payer formula, the determinative criteria utilized to calculate a child support obligation is overnight care. In this case, Luciani has the children for a total of 117 overnights and 49 nonovernight days per year. *See* discussion, at p. 286. The record illustrates that during the 49 nonovernight days, Luciani has the children for only one-sixth of the day (4 hours), while Dr. Montemurro is responsible for the remaining five-sixths (20 hours). The court of appeals has mistakenly considered the 117 and 49 figures collectively ((117+49)/365= 45%) to characterize Luciani's placement obligation as 'nearly equal.' In fact, the children's total overnight placement with their father is less than one-third. Even if one were to consider the supplementary hours generated as a result of the additional 49 nonovernight days per year (196 hours), the total physical placement with the father would equal only 34%, a figure which cannot fairly be characterized as 'nearly equal' by the court of appeals nor the dissent.

Furthermore, if Luciani had been concerned about the proper calculation of the additional 49 nonovernight days in which he had the children for four hours, he could have sought relief under Wis. Admin. Code § HSS 80.02(25) (June 1993) which recognizes that physical placement arrangements exist where additional costs are incurred, but no overnight care is provided. The note to this subsection therefore provides: "[u]pon request of one of the parties the court may determine that the physical placement arrangement other than overnight care is the equivalent of overnight care." No such request was made in the present case.

[10] The court of appeals did note, however, that it was not concluding that the shared-time provisions of the percentage standards were not applicable in this case, rather, because the circuit court did not adequately analyze the financial data, it

The determination of appropriate child support is committed to the sound discretion of the circuit court. *Weidner v. W.G.N.*, 131 Wis. 2d 301, 315, 388 N.W.2d 615 (1986); *Prosser v. Cook*, 185 Wis. 2d 745, 751, 519 Wis. 2d 649 (Ct. App. 1994). Whether the trial court properly exercised its discretion is a question of law. *Seep v. Personnel Comm'n*, 140 Wis. 2d 32, 38, 409 N.W.2d 142 (Ct. App. 1987). "An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State v. Gudenschwager*, 191 Wis. 2d 432, 440, 529 N.W.2d 225 (1995); *see also Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982); *Stephen L.N. v. Kara L.H.*, 178 Wis. 2d 466, 477, 504 N.W.2d 422 (Ct. App. 1993).

The circuit court is required to determine the appropriate award of child support by application of the percentage standards mandated under Wis. Stat. § 46.25(9) (1993-94) as established in HSS 80.04(2). *See* Wis. Stat. § 767.25(1j) (1993-94). In *Weidner*, this court referred to the Department of Health and Social Services Memorandum to Members of the Wisconsin Judiciary in interpreting the proper application of the child support percentage standards:

> According to the Department, these percentage standards are an evidentiary shortcut for establishing the need of the child for support. The standards, establish ' . . . the cost of maintaining a child as an

---

failed to provide substantial reasons for adherence to the guidelines. *Luciani*, 191 Wis. 2d at 78.

equivalent to that percentage of the family income and disposable assets that a parent shares with children in his or her custody.'

*Weidner*, 131 Wis. 2d at 318 (citing *DHSS Memorandum to Members of the Wisconsin Judiciary*, December 20, 1983, Attachment I at 3). This court's recent decision in *Grohmann v. Grohmann*, 189 Wis. 2d 532, 525 N.W.2d 261 (1995) clarified the presumptive nature of the percentage standards where we stated: "[a]bsent a showing of unfairness, courts must determine a parent's child support obligation by using the percentage standard established by the Department of Health and Social Services . . . ." *Id.* at 536.

The framework of the statute permits the court to modify the otherwise presumptive calculation if it is demonstrated by the greater weight of the credible evidence that application of the percentage standards would be unfair to the children or either of the parties, *see* Wis. Stat. § 767.25(1m) (1993-94). When presented with a party's challenge to application of the percentage standards, circuit court judges in exercising their discretion, are to consider the statutory factors set forth by the legislature in Wis. Stat. § 767.25(1m), and articulate the basis for their decision to either remain within the guidelines or allow a modification. The circuit court's articulation of its reasoning process is essential in reaching a reasonable determination and to aid this court in reviewing the discretionary decision. *See Haugan v. Haugan*, 117 Wis. 2d 200, 215, 343 N.W.2d 796 (1984).[11] The burden of proof before the

---

[11] The court of appeals' decision in *Schnetzer v. Schnetzer*, 174 Wis. 2d 458, 497 N.W.2d 772 (Ct. App. 1993) attempted to clarify the burden on the circuit courts when strictly applying the percentage standards. The *Schnetzer* case dealt with a post-

court lies with the party requesting the modification under the percentage standards.

Dr. Montemurro challenges the court of appeals' decision to reverse the child support award on two fronts. First, she argues that Luciani failed to prove by the greater weight of the credible evidence that application of the percentage standards resulted in unfairness to him. Secondly, she asserts that the court of appeals' decision has held that in high-income cases, the circuit court must make a threshold determination that the guidelines are to be utilized, rather than presumptively applying the percentage standards. She asserts that this represents an improper, judicially-legislated shift in the prescribed methodology that the percentage standards presumptively apply unless a showing of unfairness has been established.

Here, the circuit court exercised a rational mental process in examining the list of factors provided under

judgment child support modification action, in which Mr. Schnetzer contended that the circuit court had abused its discretion in applying the percentage standards. The appellate court held that the factors provided in Wis. Stat. § 767.25(1m) (1989-90) "need to be demonstrably considered only where the trial court deviates from the percentage standards." *Id.* at 463. Rather, where the court elects "not to deviate from the percentage standards, the court, in exercising its discretion, need only articulate its reason and base its decision on facts of record and the correct legal standard." *Id.* We find that the above-quoted language improperly suggests that a circuit court, in considering a party's challenge to the presumptive application of the percentage standards, is not required to articulate its analysis of the statutory factors found in Wis. Stat. § 767.25(1m), except where it decides to deviate from the guidelines. This interpretation of the proper role of the circuit court is contrary to our holding in the present case, and we therefore overrule the language expressed in *Schnetzer.*

Wis. Stat. § 767.25(1m) (1993-94) which produced a reasonable conclusion that application of the 24% child support obligation would not be unfair to Luciani. The court's supplemental decision provides a discussion of the statutory factors at length, and makes a number of factual determinations which support its decision that the evidence in the record did not warrant a finding of unfairness. The circuit court's findings included the following: (1) the parties were not lacking financial resources sufficient to make the prescribed contributions for the welfare and support of the minor children; (2) Luciani had submitted no evidence to show that he will be unable to support himself at a level equal to that enjoyed during the marriage after payment of the child support obligation; (3) Luciani was under no obligation to support any other person; (4) financially, the children would not be reduced to a lower living standard than that enjoyed during the marriage; (5) the cost of daycare had been considered by the court; (6) the payment of health insurance premiums imposed no substantial burden on Luciani; (7) the period of physical placement with Luciani had been considered by the court, and (8) the far greater earning capacity of Dr. Montemurro had also been considered.

In addition, the court reiterated the previously mentioned non-economic relationship concerns expressed in the initial decision of April 8, 1993. The court found these facts pertinent to the mental and emotional development of the children, and considered them as other factors relevant to the determination of what was in their best interest. *See* Wis. Stat. § 767.25(1m)(i). The circuit court therefore balanced the welfare of the children against any perceived unfairness to Luciani in reaching a reasoned conclusion from the facts of the record.

Dr. Montemurro argues that the circuit court made appropriate findings of the relevant child support factors to support the monetary award under Wis. Stat. § 767.25(1m), and that Luciani failed to demonstrate by the greater weight of the credible evidence that unfairness would result if the percentage standards were employed. She distinguishes the court of appeals' reliance upon the language in *Hubert* by arguing that although this is a high-income case, the support award does not so far exceed the needs of the child so as to produce an absurd result.

In *Hubert*, the ex-wife of a cardiac surgeon with an annual income of over $1,000,000 asked the circuit court to determine child support by straight application of the percentage standards. The circuit court determined that such application would be unfair to the husband, and modified the award accordingly.[12] *Hubert*, 159 Wis. 2d at 814. The court of appeals reversed, holding that the circuit court had failed to consider several factors weighing against deviation, including the economic level the children would have enjoyed had the marriage continued. *Id.*

Relying on *Parrett v. Parrett*, 146 Wis. 2d 830, 841-42, 432 N.W.2d 664 (Ct. App. 1988) for the proposition that courts may deviate from the percentage standards if an award will exceed the children's needs, the court of appeals noted that "[w]e agree that in cases where the parties have a substantial marital estate and income far beyond the average income of most people, the robotistic utilization of the percentage standards may give absurd results." *Hubert*, 159 Wis. 2d at 814.

---

[12] The circuit court ordered Mr. Hubert to pay $4000 per month in child support ($48,000 annually), which was substantially lower than the 25% figure ($250,000 annually) prescribed by the percentage standards.

The language in *Hubert* that both Luciani and the court of appeals rely upon came from the court's recognition that a case may exist where application of the percentage standards would result in a child support award far beyond the child's needs, thereby justifying deviation from the general rule of strict adherence. The facts of the case at bar, however, in light of the lack of evidence presented by Luciani, do not produce the absurd result that is contemplated by the court in *Hubert*. Luciani's challenge to the circuit court's order relates more to his contention that his former wife should bear the total burden of child support simply because of her substantially higher income.[13]

In this case, the circuit court's application of the percentage standards was by no means "robotistic," as suggested by the court of appeals, as it considered the relevant statutory factors in determining Luciani's support obligation.

Luciani, however, maintains that the circuit court failed to consider the disparity of the parties' incomes, as well as the statutory factors, constituting an erroneous exercise of discretion. The essence of Luciani's challenge is that application of the percentage standards in this case will produce an absurd result. He suggests to this court that the record is "replete with evidence" which supports this claim, and therefore seeks a modification of the child support obligation as determined under Wis. Stat. § 767.25(1j).

---

[13] We note that Luciani's position on appeal before this court is seemingly contrary to that exhibited at the circuit court level, in which he proposed that the court obligate each party to provide necessary support while the children were physically placed with each respective parent. *See supra*, p. 289.

Reviewing the record in light of Luciani's claim, we examine the evidence presented to the circuit court to demonstrate that unfairness would result. The burden of demonstrating that a modification of the child support award is warranted in a particular case rests with the requesting party, not the circuit court.[14] The evidence presented by Luciani to support his claim for unfairness rests primarily on the figures contained within the financial disclosure statement and his testimony at trial.

In his financial disclosure statement, Luciani represented to the court that his annual childcare expenses (i.e., daycare) would slightly exceed $10,000. However, when questioned about the validity of this figure by opposing counsel, Luciani modified the child care claim to an average of $30 per week or $1560 per year. He admitted that he has custody of the children on alternating weekends from January through May, and September through December, and therefore incurs no child care expenses during this time. Such expenses would be confined to the months of June and August, during which time Luciani would take vacation, and perhaps his parents visiting from Florida would care for the children, as they had done for an entire summer in the past. These salient factors would significantly reduce the already deflated child care expense estimate offered to the court by Luciani. It is clear that the claimed figures in the financial disclo-

_____

[14] Contrary to Luciani's argument that the issue of his having met his burden of proof has not yet been addressed by the circuit court, we find that it is precisely the issue before us, as we consider whether the circuit court abused its discretion in finding that the record lacked any evidence to support a claim for unfairness.

300

sure statement were not supported by the testimony at trial.

On further cross-examination, a number of additional figures were also reduced. Luciani's claimed housing expense was $1,124.30, but he testified that his actual monthly rent was $650, a fixed cost unaffected by the presence of the children. The claimed utility expense of $195 was reduced to $150. In addition, Luciani testified that he incurred clothing expenses for the children in the amount of $20 per week and approximately $10 per week in medical supplies. This was the extent of the evidence provided by Luciani in support of his request to modify the child support obligation.

In fact, a comprehensive review of the record in this case further evidences testimony by Luciani which seemingly undermines his challenge that the child support order is patently unfair. Luciani initially testified that his annual budget would require a figure of $36,500, based upon income and liabilities in his financial disclosure statement. This computation, however, included the erroneous claim of child care expenses in the amount of $200 per week. As indicated above, Luciani's testimony dramatically reduced this figure to only $30 per week. Subsequent to being alerted to this discrepancy by opposing counsel, Luciani amended the budget claim to an annual figure of $27,600.

Upon a cursory inspection, this figure would appear to exceed Luciani's after-tax income of $22,000, resulting in the alleged 'forced impoverishment' suggested by the dissent. Dissent, at 311. However, the $22,000 figure significantly underrepresents the income available to Luciani. The dissent has failed to appreciate the fact that he will also receive an addi-

301

tional $12,000 annually ($1000/month), in the form of maintenance from Dr. Montemurro. When coupled with the $22,000, this "income" will produce an annual budget that exceeds the $27,600 figure that Luciani testified he needed at trial.[15] Moreover, the discretionary income produced by this maintenance award will certainly allow Luciani to provide the children with gifts, entertainment, and vacations as he sees fit, allaying the relationship concerns expressed by the dissent. Dissent, at 311. We find that the record in this case clearly does not support Luciani's claim of unfairness, nor does it sustain the dissent's conclusion of a 'basic inequity'. Dissent, at 313.[16]

[15] We note that the circuit court maintenance award is payable for 36 months. Upon the expiration of this period, if Luciani feels that he can no longer meet his child support obligations under the current order, he may seek revision under Wis. Stat. § 767.263 (1993-94) which provides:

**Notice of change of employer; change of address; change in ability to pay.**

Each order for child support, family support or maintenance payments shall also include an order that the payer notify the clerk of court, within 10 days, of any change of employer and of any substantial change in the amount of his or her income such that his or her ability to pay child support, family support or maintenance is affected.

In order to secure such a revision in his child support obligation, Luciani would be required to prove a substantial change in circumstances. *See* Wis. Stat. § 767.32(1) (1993-94). At that time, the judge would then consider the relative change in economic condition along with the statutory factors utilized to calculate child support, and determine if a modification of the child support award is warranted.

[16] The dissent bases this conclusion upon a reference to a 1992 study authored by Melli and Brown, in which they conclude that the shared-time formula produces inequitable results

The circuit court was next presented with testimony regarding Dr. Montemurro's expenditures for the children as well as a multitude of other expenses. Dr. Montemurro was making regular payments on her medical school loans ($36,000 balance), the home mortgage ($84,000 balance; $1100/month), and payments on a business loan for her medical practice ($51,000 balance). In addition to the initial loan to open her practice, Dr. Montemurro was similarly making payments on corporate debts of nearly $44,000. To this figure we further attach the court ordered $1000 monthly maintenance award payable to Luciani for 36 months.

where the non-primary parent's time share approaches equal and where the non-primary parent has a lower income. The example from the study as cited by the dissent, however, is in stark contrast to the facts of the present case regarding placement. In the study case, the father's overnight placement was 190 days, while the mother's was 175, a difference of only 15 days. This placement arrangement was correctly characterized as 'nearly equal.' Here, Dr. Montemurro's overnight placement was 248 days, while Luciani's was 117, a difference of approximately 131 days.

Given this disparity in figures, it is inconceivable for the dissent to suggest that the physical placement arrangement in the present case is precisely analogous to the case study example. Dissent, at 312-13. *See also supra*, n. 9. Moreover, the annual income after child support of the mother in the study placed her below the poverty line, supporting the conclusion that the result was 'tremendously inequitable.' Luciani, on the other hand, is receiving $1000 monthly in maintenance over three years, and has an annual budget which exceeds that to which he testified he would need at trial. While we recognize that a disparity in income does exist, the facts of the present case do not fit the dramatic example provided by the case study and relied upon by the dissent.

With respect to the children, Dr. Montemurro had purchased the majority of their clothes, paid for counseling, guardian ad litem fees, and school tuition of $1600 in addition to weekly child care expenses throughout the year. The physical placement stipulation between the parties had placed the children with Dr. Montemurro during the week other than the months of June and August. The total cost for those expenses associated with Dr. Montemurro's continuing care for the children was approximately $1100 per week.

The parties had a final opportunity to offer additional support for their position when required to submit letter briefs to the court following the initial decision. Luciani's letter brief reiterated his position at trial, and though replete with allegations of unfairness, neglected to provide the appropriate figures to support these claims.

After reviewing the record, we are satisfied that the circuit court properly concluded that Luciani had failed to prove by the greater weight of the credible evidence that the presumptive application of the percentage standards would be unfair to the children or either party. The court of appeals' decision stated that it believed that the circuit court had found the disparity of the parties' incomes to be an irrelevant consideration on the question of adherence to the percentage standards. *Luciani*, 191 Wis. 2d at 77. This interpretation is mistaken. The circuit court's supplemental decision clarified that the disparity in income does not automatically trigger deviation from the percentage standards. Rather, it is but one of many factors

that the court considers after receiving a modification request. *See* Wis. Stat. § 767.25 (1m)(hs) (1993-94).[17]

The recent decision by the court of appeals in *Kjelstrup v. Kjelstrup*, 181 Wis. 2d 973, 512 N.W.2d 264 (Ct. App. 1994) demonstrates that where the parent with primary custody earns a higher income, it does not necessarily follow that "unfairness" results when the circuit court does not deviate from the percentage standards. In *Kjelstrup*, the court commissioner increased Susan Kjelstrup's child support award, at a post-judgment modification hearing, to equal the percentage standard. *Id.* at 974. Rod Kjelstrup petitioned, and the court reduced the commissioner's award, stating that the application of the percentage standards would be unfair given the recent disparity in the parties' incomes.

The court of appeals reversed the decision of the circuit court because it deviated from the percentage standards by relying solely upon the income discrep-

---

[17] At the time of the trial, Wisconsin's shared-time payer formula, as promulgated in the administrative code, did not consider the income of the primary custodial parent. Rather, it only dealt with the income of the lesser-time parent. The new shared-time formula in Wis. Admin. Code § HSS 80, effective March 1, 1995, does not consider the income of both parents until the lesser-time parent is over the 40% threshold in overnight placement. Luciani is presently at 32%. *See* Margaret W. Hickey, "New Rules for Child Support Obligations," 68 WIS. LAW. 15 (Apr. 1995); Marygold S. Melli, "Child Support by Shared-Time Parents: Why a Simple Offset Formula is Wrong," 15 WIS. J. FAM. L. 41 (Apr. 1995) (characterizing the new administrative rule in shared-time cases as a progressive effort in addressing issues raised by the author in prior articles, regarding the need to recognize the changing economic burdens of shared parenting).

ancy among the parents. *Id.* at 976. In its analysis, the court referred to the preface of Wis. Admin. Code § HSS 80 to note the circuit court's error. The preface to the chapter provides as follows:

> The [percentage of income] standard is based on the principle that a child's standard of living should, to the degree possible, not be adversely affected because his or her parents are not living together. It [the standard] determines the percentage of a parent's income and potential income from assets that parents should contribute toward the support of children if the family does not remain together. The standard determines the minimum amount each parent is expected to contribute to the support of their children. It expects that the custodial parent shares his or her income directly with their children.

*Id.* (citing § HSS 80 Preface). In the present case, Luciani similarly seeks to have the support obligation modified because Dr. Montemurro earns a greater income. This argument fails to recognize the assumption that underlies application of the percentage standards, as stated above. Dr. Montemurro is presumed to contribute at least 25%[18] of her income to the children's support, thereby reducing the income disparity that Luciani relies upon. And further, as made clear by the decision in *Kjelstrup*, disparity in the parties' incomes, by itself, is not sufficient to require the court to deviate from strict adherence to the percentage standards. Absent a showing that such disparity will adversely affect the children or the parties in some demonstrative manner, it is simply one among a number of factors to be considered by the court when a

[18] *See Kjelstrup*, 181 Wis. 2d at 977.

request to deviate from the percentage standards is presented.

We conclude that the circuit court reviewed the disparity of the parties' incomes, the amount of physical placement with Luciani, as well as other relevant factors, and exhibited a reasoned process in concluding that deviation from the percentage standards was not warranted in this case. The circuit court did not err in exercising its discretion, and we therefore reverse the court of appeals on this issue.

Finally, we address Dr. Montemurro's contention that the court of appeals ignored the statutory presumption of the percentage standards and implicitly rewrote the statute to require the circuit court to make a threshold determination that the guidelines are to be utilized, thereby improperly shifting the burden of proof away from Luciani.

The court of appeals' error is exhibited in a series of footnotes, which set forth the issue presented by this review:

> On a somewhat similar theme, Angelina contends that the amount of support to be paid by the payer under the guidelines is not influenced by the income of the payee. We agree. The standards expect that the custodial parent share his or her income directly with the children. . . . *Here, however, the issue is whether the family court properly chose to adhere to the standards in the first instance.* It is not whether the court correctly computed Michael's support obligation under the standards. This is a subtle but important distinction. (Emphasis added.)

*Luciani*, 191 Wis. 2d at 77 n.5. The appellate court's reversal of the percentage standards statutory pre-

307

sumption in a high-income payee case is further evidenced by the following passage:

> Angelina argues that Michael's attack is on the mechanics of the shared-time formula .... We disagree. Michael makes no argument that the family court's computation of his support obligation under the shared-time payer formula was flawed. *Rather, he argues against the application of the shared-time payer formula on a threshold basis.* (Emphasis added.)

*Id.* at 77-78 n.6.

The appellate court's decision implies that the previously existing presumptions regarding application of the percentage standards are inapplicable in high-income disparity cases. The decision has attempted to shift the established burden of proof in cases where unfairness is alleged, from the requesting party to the circuit court. The circuit court would now be required to conduct its own threshold investigation to determine the appropriateness of the percentage standards in a high-income case, regardless of the amount of evidence presented by the requesting party. This approach ignores the administrative regulation and stated presumptions underlying the statute, *see Kjelstrup*, 181 Wis. 2d at 977, as well as case law interpreting the percentage standards as an evidentiary shortcut to be utilized in determining the relative needs of the child for support. *Weidner*, 131 Wis. 2d at 318.

The court of appeals' dissatisfaction with the shared-time payer formula on the basis that neither the Wisconsin Statutes nor the Administrative Code consider the income of the custodial parent, is not the relevant inquiry in light of the nature of the support guidelines as adopted in Wisconsin. The rules promul-

gated by DHSS are consistent regardless of the noncustodial parent's status as a shared-time payer or a simple payer: the custodial parent's income is generally not considered under Wisconsin law. *See supra*, n. 17. Future revisions to the mechanics of the support statutes and the shared-time payer formula in high-income cases is properly left to the province of the legislature.

The obligation to support one's children is a basic one. Luciani's contention that he should be relieved of this burden simply because his ex-wife earns a substantially higher income runs contrary to the paramount goal of child support, namely, securing the best interest of the children. *Kuchenbecker v. Schultz*, 151 Wis. 2d 868, 875, 447 N.W.2d 80 (Ct. App. 1989). We recognize the role that income disparity may play in a particular case, but under the facts before us, it is only relevant where Luciani can demonstrate that he is unable to pay the court ordered child support or that such disparity in income will adversely affect the children or himself. The circuit court properly concluded that he has failed to do so in this case. Luciani's claim of unfairness is unsupported by the facts, as he enjoys an annual budget which exceeds that figure which he testified at trial would be required to maintain himself and the children.

The language in Wis. Stat. § 767.25 (1993-94) is clear. The circuit court is required to determine the appropriate amount of child support by application of the percentage standards. However, a requesting party's showing of unfairness by the greater weight of the credible evidence will allow the court to deviate from this presumptive application.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

WILLIAM A. BABLITCH, J. *(dissenting).* I agree completely with the sound legal analysis written by the majority. Where I disagree is with the application of the law to the facts of this case. Accordingly, I respectfully dissent.

The economic facts are somewhat difficult to glean from this record, particularly because the circuit court made no specific economic analysis or findings other than some conclusory references. What we do glean from the record is the following.

Husband Michael Luciani has aftertax monthly income of approximately $1900 ($22,000 annually). Wife Dr. Angelina Luciani has aftertax monthly income of approximately $8300 ($100,000 annually). Mr. Luciani has the children for approximately 117 overnight days and 49 nonovernight days per year, a placement characterized by the court of appeals as a "nearly equal child placement provision." *Luciani v. Montemurro-Luciani,* 191 Wis. 2d 67, 77, 528 N.W.2d 477 (1995).[1] He pays $650 a month rent for a home for himself and his children when they are with him. From the statement of facts presented by Dr. Luciani's attorney to the court of appeals, we further learn that Mr.

---

[1] The majority takes issue with this conclusion of the court of appeals, stating that it is "unsupported by the record. . . . In fact, the children's total overnight placement with their father is less than one-third." *See* majority op. at 293, n. 9. Of course, the one-third figure is accurate, but only with respect to overnight placement. Mr. Luciani also has the children for 49 nonovernight days (4 hours per day). Although this is not equal time, it is certainly arguable that this placement approaches it.

310

Luciani spends about $150 monthly for utilities and $130 monthly for child care.

The majority affirms the circuit court decision that says Mr. Luciani must pay approximately $680 a month in child support. Taking into account his rent, utilities, and child care, this leaves him with approximately $290 a month for himself (and his children when they are with him) for expenses such as food, car, gasoline, clothing, car insurance, health insurance, life insurance, and incidentals. It leaves him with little or no discretionary income to spend on gifts, entertainment, vacations and the like for either himself or the children. We compare this to his wife who will have more than ample discretionary income to bestow upon the children, a fact that will certainly resonate with them as they get older.

On the face of it, this result is tantamount to forced impoverishment of one spouse while the other spouse has ample income to live exceedingly well.[2] Without further economic analysis by the circuit court with respect to the circumstances of each party, this result could hardly be more inequitable.

What we have here is a situation in which the non-primary parent with a substantially lower income than the primary parent has a time share with the children that approaches equal time. Such a situation was

---

[2] Although the circuit court provided a maintenance award of $1000 a month, maintenance is payable for only 36 months. After that, according to the circuit court, "maintenance shall be barred." At that time, the two children will be ages 8 and 9.

Although the majority argues that Mr. Luciani may seek revision after the maintenance expires, the family court's order that "maintenance shall be barred" leaves scant hope that such request would be viewed with favor absent some change in circumstance other than the termination of maintenance.

directly addressed in a 1992 study authored by Marygold S. Melli and Pat Brown under a contract between the Wisconsin Department of Health & Social Services and the Institute for Research on Poverty, entitled "Child Support in Shared Physical Custody in Wisconsin: Present Guidelines and Possible Alternatives."

In addressing the shared-time formula, the authors state that the formula results in inequitable award calculations in two situations: one, where the non-primary parent's time share approaches equal; two, where the non-primary parent has a lower income. Where both situations are present, as they are here with husband Luciani, the authors state unequivocally: "the resulting support award, as calculated by the formula currently in effect, *produces markedly inequitable results.*" *Id.* at 15 (emphasis added).

The authors use an example, outlined more fully below,[3] in which the mother is the non-primary parent with $3000 less income than the father, but, after paying support consistent with the current formula, ends up with nearly $10,000 less yearly income than the

---

[3] The authors state:

> In this case, a mother who has her children living in her home for 15 fewer days over the course of a year than the father, and who has a yearly income of $16,000 versus a yearly income of $19,000 for the father, would be ordered to pay the father $3,282 per year using the formula currently in effect. The family incomes which would result after the child support transfer are, for the father, $22,292; for the mother, $12,718. The disparity in family finances which results from the application of the current shared custody child support formula would be *tremendously inequitable* in this case for the mother and the children.

Melli, *Child Support in Shared Physical Custody*, at 17 (emphasis added).

father. The authors' conclusion is that this is "tremendously inequitable" to the mother. *Id.* at 17.

Here, the facts are different from their example only with respect to who the non-primary parent is (and of course gender should make no difference) and the amount of the income disparity (which is far greater here than in the example where the authors found the disparity to be "tremendously inequitable" to the mother).

There is a way for this court to resolve the inequity: put teeth into the statutory provision which permits the court to deviate from the standards if the court finds by the greater weight of the credible evidence that the use of the standards is unfair to the children or the party requesting such deviation. *See* Wis. Stat. § 767.25(1m). To do so requires far more fact finding than is presented by this record.

I conclude that Judge Nettesheim, writing for a unanimous court of appeals, got it exactly right. That court concluded that the circuit court "erred in the exercise of its discretion . . . by failing to analyze the economic consequences of the support order in light of the parties' budgets, incomes and nearly equal child placement provisions." *Id.* Even a cursory look at both circuit court decisions compel this conclusion. Not one figure is cited. There is no analysis whatsoever. All statements are conclusory.

The majority says Mr. Luciani failed to prove by the greater weight of the credible evidence that the presumptive application of the percentage standards would be unfair to either the parties or the children. What more does he need to produce other than the above described facts to establish basic inequity? These facts, on their face, are more than enough evidence to overcome the presumption. I agree with the court of

appeals that this case must be sent back for further economic analysis. High income disparity cases present significant problems of fairness, requiring a high degree of economic analysis. Without such analysis, at the very least a perception of unfairness will inevitably linger. Accordingly, I dissent.